[Civil No. 1021.  Filed March 27, 1908.]

[95 Pac. 94.]

## COPPER BELLE MINING COMPANY, a Corporation, et al., Defendants and Appellants, v. MARTIN COSTELLO, Plaintiff and Appellee.

1. APPEAL AND ERROR—REVIEW.—Error affecting coparty cannot be urged by another coparty. A corporation defendant in a foreclosure suit cannot urge upon appeal that the trial court erred in sustaining demurrers to a petition of intervention by the stockholders.

2. ACKNOWLEDGMENT — CORPORATION — CERTIFICATE — REQUISITES — REV. STATS. ARIZ. 1901, PAR. 739, CONSTRUED.—Paragraph 739, *supra,* provides that an acknowledgment made by the officers of a corporation shall bear certificate showing that such persons, as such officers, acknowledged the execution of the instrument as the free act and deed of the corporation.

3. CORPORATIONS—POWERS—MORTGAGE.—In the absence of any restrictive provision either in the charter or in the laws of the state under which it is organized, a mining corporation is not prohibited from executing a note or mortgage by reason of the fact that the charter itself does not expressly authorize such an act. It is a necessary power that exists by implication of law and as incident to its right to incur any indebtedness.

4. CORPORATIONS—PURCHASING OWN STOCK.—Where there is no statutory liability on the stock, a solvent corporation may in good faith purchase its own stock, subject to the right of creditors upon a showing that they have been injured thereby.

5. SAME—SAME.—A purchase by a mining company of its own stock is valid, as against the corporation, where it is done at the discretion of the officers in good faith and in the exercise of their control of the affairs of the company for the purpose of getting rid of a superintendent, the owner of a small amount of stock, whose management of the company was believed to be injurious; and at the time of the purchase there is no evidence that the company was insolvent or that any of the officers or directors of the company, or any of its stockholders, had reason so to believe or that the one advancing money to help purchase stock had any knowledge on the subject.

6. SAME—SAME.—In the absence of any statute prohibiting the purchase by a company of its own stock, such purchase is a transaction not *per se* void; but its validity depends on the circumstances of the case.

7. SAME—SAME.—Where there is no proof of any loss or injury to nonassenting stockholders because of the purchase by a mining company of its own stock, such purchase is valid.

8. CORPORATIONS—BOARD   OF   DIRECTORS—POWERS—EXECUTION   OF MORTGAGE.—Inasmuch as a corporation may, in the absence of any statutory requirement for the assent of stockholders, under authority of its board of directors, authorize the execution of a note and mortgage as a part of the business incident to the corporation and properly carried on by the directors, the fact that notice of a special stockholders' meeting at which the directors were authorized to execute a mortgage may have been insufficient in not setting forth the purpose of the meeting would not render the mortgage invalid, where the execution of the mortgage was duly authorized by the directors' meeting.

9. SAME — FORECLOSURE — MORTGAGE — DEFENSES — AGAINST   WHOM AVAILABLE.—That the stockholder did not transfer his stock, and could not transfer it by reason of a pooling agreement under which the stock was held in escrow for a certain length of time after the giving of said mortgage, is no defense as against the mortgagee, in a foreclosure suit on the note and mortgage executed by a corporation to procure funds to make a cash purchase of said stockholder's stock and in settlement with him.

10. SAME—MORTGAGE—DEBTS SECURED—MINING CLAIMS—ASSESSMENT WORK.—A mortgage of certain mining claims provided that the mortgagor should perform the annual assessment work, and, on failure to do so, the mortgagee might, if he considered it necessary, perform such assessment work, the expenditure ·therefor to be a further lien on the claims. The mortgagor performed a large amount of work on one of the claims. *Held,* that the mortgagee was within his rights in performing assessment work on such claims as the mortgagor omitted to do work upon, and he was not obliged to accept the work done on one claim as done for the benefit of all, and thereby risk the chance of an adverse determination of the question as to the sufficiency of such work for all the claims.

11. APPEAL AND ERROR—REVIEW—SCOPE.—Where, in foreclosure of a mortgage suit, there is in the record no application to the trial court to make a sale in parcels rather than in entirety, nor any ruling of the court in that respect or objection in the lower court to the method of sale, nor when there is none presented in the motion for new trial, the supreme court will not be disposed to review the action of the trial court in its determination of the method of sale.

12. CORPORATIONS  — MORTGAGE — FORECLOSURE — ACCOUNTING —WHEN PROPERLY DENIED.—In an action to foreclose a mortgage given to secure funds advanced to a corporation for the purpose of enabling it to purchase a portion of its own stock from one of its

stockholders, said stockholder having been made a party defendant, an application by the company for an accounting between said stockholder and itself, and for a reference to determine what recovery should be had by the company against the stockholder on account of any judgment that might be rendered in favor of the mortgagee against the company, was properly denied, as the facts sought to be thus proved would have afforded no defense on the note and mortgage as against the mortgagee, and were not within the issues in the action.

13. MORTGAGE—FORECLOSURE—EVIDENCE—ADMISSIBILITY.—In an action to foreclose a mortgage executed by a corporation to secure money advanced to said corporation to enable it to purchase its own stock from one of its stockholders, evidence as to statements made by said stockholder with respect to the indebtedness of the corporation, and reliance thereon, was immaterial, in the absence of proof of the insolvency or financial embarrassment of the corporation.

14. SAME—SAME—SAME—SAME.—In an action to foreclose a mortgage executed by a corporation to secure an advance of funds, to enable it to make a cash payment, on purchasing its own stock from a stockholder, a certified copy of a list of debts proved in bankruptcy against the corporation was not material, where it did not tend to prove any indebtedness at the time of execution of the mortgage.

15. APPEAL AND ERROR—RECORD—REVIEW—SCOPE.—Assignment of error that the court erred in excluding a document offered in evidence will not be considered where the document is not preserved in the record.

16. APPEAL AND ERROR—EXCLUSION OF EVIDENCE—FACTS OTHERWISE APPEARING—HARMLESS ERROR.—The exclusion of a document offered in evidence is harmless error where it appears that other evidence was subsequently offered to the same effect.

17. JUDGMENT MUST CONFIRM—PLEADINGS AND PROOF.—In a foreclosure suit on both a first and second mortgage, the court all through the trial considered the second cause of action as not before it for adjudication, since prematurely brought. And defendants were, by reason of the court's attitude in that regard, precluded from offering testimony material to their defense. *Held,* that it was error to include in the judgment an amount found to be due as interest on the notes secured by the second mortgage, whatever may have been the legal effect of the note and mortgage and the right of plaintiff to secure in the action a judgment for the interest then due.

18. APPEAL AND ERROR—REVIEW—SCOPE.—Where the action of the trial court in a foreclosure suit on first and second mortgages, in holding that the second cause of action had been prematurely brought and was not properly before it, not having been taken to

the supreme court for review by plaintiff, such action must be held to be correct.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge.   Modified and affirmed.

The Copper Belle Mining Company, a West Virginia corporation, was the owner of certain mining claims situated in this territory.   In 1899 one John Gleeson was the owner of 8,000 shares of the capital stock of the company, was its general manager and superintendent, on a salary, and had an interest in the net profits of a store of the company on its premises.   Gleeson had general charge at the mines, paying the wages of the employees by checks drawn upon the funds deposited in the bank by the company for that purpose. The matte from the mines was shipped to various points by Gleeson, the proceeds therefrom not being collected by him, he retaining no management or control thereof, and the business of the company being transacted in New York.   Gleeson had been elected a director, but never met as one of the board of directors, or qualified or acted as such.   In January, 1902, certain of the officers of the company came to Arizona for the purpose of effecting an arrangement to get Gleeson out of the company.   An arrangement was entered into between Gleeson and these representatives of the company, by which the company agreed to pay Gleeson for his interest in the store, for salary due him, and for his 8,000 shares of stock the sum of $68,100.   Gleeson demanded a partial cash payment.   Mr. James Reilly, who was the local counsel of the company, agreed to procure from Costello (the appellee) a loan to the company for the amount of the cash payment demanded by Gleeson, provided the company would duly authorize such loan, and would give a mortgage for the amount thereof upon its property.   Thereupon the visiting officers of the company returned to New York, a stockholders' meeting was called, and authority was given at such stockholders' meeting to the board of directors, authorizing such board to execute a note of the company to Costello for $15,100 and a mortgage on its property to secure the same, and, further, to execute to Gleeson four promissory notes of the company, for $13,250 each, the same to be secured by a second mortgage on the property.   Thereafter, and on the 1st of February, 1902, the board of directors held a meeting, at which

XI Ariz.—22

the minutes of the meeting of the stockholders were read, and at which the directors authorized the president and secretary to draw up and execute the notes and mortgages referred to. The note for $15,100, and the first mortgage securing the same, were transmitted to Costello, together with a draft, drawn by the company on Costello in favor of Gleeson for the amount of the note, which draft was paid by Costello. The four notes of the company, payable to Gleeson, and the second mortgage securing the same, were delivered to him. These transactions were in February, 1902. Subsequently Costello purchased from Gleeson the four notes, for $13,250 each, and the second mortgage securing the same. The note to Costello for $15,100 was a three year note, and became due on February 4, 1905. The four notes to Gleeson were four, five, six and seven year notes, becoming due February 4, 1906, February 4, 1907, February 4, 1908, and February 4, 1909, respectively. By the terms of the mortgage to Costello, the latter was authorized to have the assessment work required by law done on the mining claims, if he found it necessary for the preservation of the title thereto. For this purpose Costello expended the sum of $802.75. The company paid the interest due on the note to Costello to February 4, 1903, but failed to make any further payment thereon, either of principal or interest, or the amount paid out by Costello for assessment work. The interest due on the notes to Gleeson to February 4, 1903, was also paid; but no further payments were made on such notes. In February, 1903, the corporation was adjudged a bankrupt. Thereafter all the property covered by the mortgages was deeded to a new company, organized under the laws of the territory of Arizona, bearing the same name, to wit, the Copper Belle Mining Company.

In July, 1905, subsequent to the maturity of the $15,100 note, but prior to the maturity of the other notes, Costello brought this action against the Copper Belle Mining Company of West Virginia and the Copper Belle Mining Company of Arizona for the foreclosure of the mortgages. The complaint was divided into two causes of action: First, on the $15,100 note and the $802.75 assessment expenditures; the second, on the four notes, for $13,250 each, which Gleeson had assigned to Costello. The plaintiff prayed judgment for the amount of the principal and interest due on the $15,100 note, and for "the present value of the four promissory notes mentioned in the second cause of action of the plaintiff's com-

plaint," and for a sale of the mortgaged premises. A peti-
tion in intervention was filed by certain stockholders, alleg-
ing the acts of the corporation with respect to the execution
of the notes and mortgage to be *ultra vires.* A demurrer to
this intervening petition was sustained by the court. Upon
application of the defendant companies, Gleeson was made a
party defendant to the suit. The defendant companies in
their answer demurred to the complaint generally, and spe-
cially to the second cause of action, on the ground that none
of the notes sued on in the second cause of action were due
at the time the complaint was filed. They answered on the
merits, denying the allegations of the complaint, averring that
the assessment work done was unnecessary; that the notes
set up in plaintiff's second cause of action were not due; that
Gleeson was a director, superintendent and general manager,
and occupied a fiduciary and trust relation toward the cor-
poration and its stockholders; that Gleeson made false repre-
sentations to the stockholders and officers of the corporation
respecting the value of the mines, the freedom of the com-
pany from debts, and the profits of the store business; that he
induced the execution of the agreement between the company
and himself for the purchase of his stock and interest in the
company by means of false representations as to the extent
of the company's revenues and income, and its freedom from
debts. They further alleged the invalidity of the notes and
mortgage for want of consideration, for want of authority
on the part of the officers of the company to execute them,
and alleged that the acts of the corporation in that behalf
were *ultra vires.* They alleged that at the time of the execu-
tion of the notes and mortgages the company was insolvent;
that it owed debts in excess of $40,000, which had been in-
curred by Gleeson in his capacity as director, superintendent
and general manager, which fact Gleeson and Costello knew,
but which fact Gleeson concealed from the company, its offi-
cers, agents and stockholders; that at the time of the execu-
tion of the notes the company had no net profits in its busi-
ness. They set up suits brought by creditors against the
company in July, 1902, a petition in bankruptcy of July 29,
1902, and the subsequent adjudication of the company as a
bankrupt, the amount of debts proved, a sale and assign-
ment to the Arizona company of the claims of the creditors,
the indebtedness of Gleeson to the West Virginia Company,
the invalidity of the stockholders' meeting (by reason of the

failure to give proper notice thereof) at which the notes and mortgages were authorized, the nonassent of certain stockholders thereto, and prayed for an accounting between the company and Gleeson, the appointment of a referee for that purpose, a credit as an offset of any amount found to be due from Gleeson to the company, that Costello and Gleeson be required to deliver up the notes and mortgages for cancellation, and that they be perpetually enjoined from enforcing payment of the notes. The trial court rendered judgment for Costello for the amount of the $15,100 note, principal and interest, for the amount expended by him for the assessment work, and for the interest due on the four notes to Gleeson covered by the second mortgage, and ordered a foreclosure to satisfy the same. From this judgment the two corporations have appealed.

Frank H. Hereford, and Francis M. Hartman, for Appellants.

The mortgage sued on in the second cause of action did not provide for any default for nonpayment of interest. The notes and mortgage give the debtor the option of having the interest added to the principal, and there was no right of action on the notes and mortgage until after the principal became due, and therefore the demurrer should have been sustained. *Van Loo* v. *Van Aken*, 104 Cal. 269, 37 Pac. 925.

This was a transaction where a corporation purchased its own stock from one of its directors and stockholders, and gave notes and mortgages upon all its property in payment thereof. It will not be disputed that Judge Reilly (Mr. Costello's attorney) knew what the transaction was, and notice to the attorney is notice to the client. *May* v. *Le Claire*, 11 Wall. 217, 20 L. Ed. 50; *Rogers* v. *Palmer*, 102 U. S. 263, 26 L. Ed. 164; *City of Denver* v. *Sherrett*, 88 Fed. 234, 31 C. C. A. 499; *Railroad Co.* v. *Smith*, 21 Wall. 255, 22 L. Ed. 513; *Astor* v. *Wells*, 4 Wheat. 466, 4 L. Ed. 616; *Johnston* v. *Laflin*, 103 U. S. 803, 26 L. Ed. 532. A purchaser of a note of a corporation, payable to an officer of the corporation, is not a *bona fide* purchaser. *Stough* v. *Ponca Mill Co.*, 54 Neb. 500, 74 N. W. 868; Cook on Corporations, 5th ed., par. 293, p. 640. The charter of the company is silent in reference to the corporation purchasing its own shares of stock. Where a corporation enters a state other than that of its domicile, its powers are those granted by its charter, which it is

allowed to exercise by public policy and law. *In re American Security & Trust Co.,* 45 Misc. Rep. 529, 92 N. Y. Supp. 974. Where the object and primary powers of a corporation are stated in the organization, the exclusion of all others not fairly incidental is strictly implied. *Consumers Gas Trust Co.* v. *Quimby,* 137 Fed. 882, 70 C. C. A. 220; *Anglo-American L. M. & A. Co.* v. *Lombard,* 132 Fed. 721, 68 C. C. A. 89. The powers of corporations are strictly limited to those granted in their charters, or by the statutes under which they are organized. *Head* v. *Providence Ins. Co.,* 6 U. S. (2 Cranch) 127, 2 L. Ed. 229; *Moran* v. *Miami County Commrs.,* 67 U. S. 722, 17 L. Ed. 342; *Shields* v. *Ohio,* 95 U. S. 319, 24 L. Ed. 357; *Thomas* v. *West Jersey R. R. Co.,* 101 U. S. 71, 25 L. Ed. 950; *Knowles* v. *Beatty,* 1 McLean, 41, Fed. Cas. No. 7896; *Mayor etc. of City of Knoxville* v. *Knoxville etc. R. Co.,* 22 Fed. 758; *Ewing* v. *Toledo Savings Bank,* 43 Ohio St. 31, 1 N. E. 138. The powers of a corporation are measured by its charter. *Tyng* v. *Com. Warehouse Co.,* 58 N. Y. 308. When powers are conferred and defined by statute, everyone dealing with the corporation is presumed to know the extent of those powers. *Monument Nat. Bank* v. *Globe Works,* 101 Mass. 57, 3 Am. Rep. 322; *Pearce* v. *Madison & Ind. R. Co.,* 21 How. 441, 16 L. Ed. 184; *Davis* v. *Old Colony R. Co.,* 131 Mass. 258, 41 Am. Rep. 221. The corporation is not estopped from setting up that it was prohibited from making the contract. *Central Transp. Co.* v. *Pullman Palace Car Co.,* 139 U. S. 24, 55, 11 Sup. Ct. 478, 35 L. Ed. 55; 1 Keener's Cases, 618; *Pittsburg C. & St. L. Ry. Co.* v. *Keokuk,* 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157. If the charter is silent about a power, it does not exist. Black on Interpretation of Laws, 320. A contract with a corporation which it is not authorized to make is void. *National Home B. & L.* v. *Home Savings Bank,* 181 Ill. 35, 72 Am. St. Rep. 245, 54 N. E. 619, 64 L. R. A. 399; *Beach* v. *Miller,* 130 Ill. 162, 17 Am. St. Rep. 291, 22 N. E. 464; *People* v. *Chicago Gas Trust Co.,* 130 Ill. 268, 17 Am. St. Rep. 319, 22 N. E. 798, 8 L. R. A. 497.

A sale by an officer of a corporation of stock therein, made, as he knew, to the corporation itself, and paid for, as he knew, out of the assets of the company, is void as against creditors as a gift to him of the company's assets, whether it is insolvent or not. *Hall* v. *Henderson,* 126 Ala. 449, 85 Am. St. Rep. 53, 28 South. 531, 61 L. R. A. 621. A party

who loans money to a corporation knowing that the money is to be used by the company to buy shares of its own capital stock cannot collect his debt, the act being *ultra vires*. *Adams* v. *Deyette*, 5 S. D. 418, 49 Am. St. Rep. 887, 59 N. W. 214; 8 S. D. 119, 59 Am. St. Rep. 751, 65 N. W. 471. A stockholder who sells his stock to the corporation, the latter being insolvent, may be compelled to restore the consideration received by him. *Buck* v. *Ross*, 68 Conn. 29, 57 Am. St. Rep. 60, 35 Atl. 763. A corporation cannot sell, lease or mortgage property for the individual benefit of an officer or stockholder. *Minn. Threshing Mach. Co.* v. *Jones,* 95 Minn. 127, 103 N. W. 1017. The general rule is that a corporation has no power to traffic in its own stock (*Herring* v. *Ruskin etc. Assn.* (Tenn. Ch.), 52 S. W. 327); and that unless the governing statute or constitution of a company authorizes it in express terms to purchase its own shares, such a purchase is *ultra vires. Coppin* v. *Greenlees & Ransom Co.,* 38 Ohio St. 275, 43 Am. Rep. 425. A corporation can only become the purchaser of its own stock in payment of debts owing to it. *Taylor* v. *Miami Exporting Co.,* 6 Ohio, 177; *State* v. *Franklin Bank,* 10 Ohio, 91. Where a third party makes, with the officers of a corporation, an illegal contract beyond its powers, as shown by its charter, such third party cannot recover, because he acts with the knowledge that the officers have exceeded their power, and between him and the corporation and its stockholders, no amount of ratification by those authorized to make the contract will be valid. *Lucas* v. *White,* 70 Iowa, 541, 59 Am. Rep. 449, 30 N. W. 771.

James Reilly, and Ben Goodrich, for Appellee.

The only limitation of the power of a corporation in this territory is that expressed in subdivision 6 of paragraph 765 of the Revised Statutes of 1901.

In *Willamette Co.* v. *Bank of British Columbia,* 119 U. S. 192, 7 Sup. Ct. 187, 30 L. Ed. 384, the question was whether a corporation could mortgage its franchise. It was contended by defendant that it could not. Mr. Justice Miller, in passing upon the question, says: "There seems to be no limitation upon the power of the corporation to dispose of whatever it acquired under the statutes which call it into being"; and held "that the power to sell included the power to mortgage." See, also, *People* v. *President & T. C. of C.,* 38

Cal. 168. In the absence of prohibitive statutes, a corporation may buy its own stock. *Wisconsin Lumber Co.* v. *Greene & W. Tel. Co.,* 127 Iowa, 350, 109 Am. St. Rep. 387, 101 N. W. 742, 69 L. R. A. 968-971; *First Nat. Bank of Salem* v. *Salem C. F. Mills Co.,* 39 Fed. 89. The test of *ultra vires* is not, Did the legislature expressly enable the corporation to make the principal contract? but, Has it prohibited it? And any act not prohibited by the statute stands. 2 Beach on Corporations, secs. 422-424, and notes.

KENT, C. J.—The appellants have assigned numerous errors, which we will consider separately, so far as it seems necessary so to do. The appellants claim that the trial court erred in sustaining the demurrers to the petition of intervention of the stockholders. If the case was a proper one for an intervention by nonassenting stockholders, it is not necessary to consider the correctness of the trial court's ruling in sustaining the demurrer to the petition in intervention, since the petitioners have not appealed therefrom, but are content with the ruling of the court, and the corporation cannot be heard to complain of the court's action in that respect.

It is claimed that the court erred in admitting in evidence, as against the Arizona corporation, the mortgage securing the $15,100 note; the objection being that the acknowledgment thereto did not recite that the officers executed the same "as the act and deed of the corporation," and hence it was not entitled to be recorded. Our statute provides: "If the acknowledgment is made by the officers of a corporation, the certificate shall show that such persons as such officers (naming the office of each person) acknowledged the execution of the instrument as the free act and deed of such corporation, by each of them voluntarily executed." Rev. Stats. Ariz. 1901, par. 739. The acknowledgment was in the following terms: "Before me, Oliver W. Beals, a notary public in and for the county aforesaid, on this day personally appeared B. Brunner and George E. Crawford, both personally known to me to be the president and secretary, respectively, of the Copper Belle Mining Company, the corporation that executed the foregoing instrument, and they each for himself acknowledged to me that he executed said instrument as president and secretary, respectively, of the said corporation, by the authority of a resolution of the board of directors of said corporation passed the first day of February, 1902, for the purpose and con-

sideration therein expressed.'' The resolution of the board of
directors referred to was later put in evidence. A literal com-
pliance with the precise language of the statute is not requi-
site, if there has been a substantial compliance therewith. In
the case before us the resolution of the board of directors (the
act of the corporation) expressly authorized the execution of
the instrument, and the acknowledgment recited that it was
executed by the authority of such resolution and for the pur-
pose therein expressed. We think it was sufficient in form,
and not subject to the objection urged. *Muller* v. *Boone,* 63
Tex. 91; *Ballard* v. *Carmichael,* 83 Tex. 355, 18 S. W. 734.

The principal assignments of error relate to the action of
the court in rendering judgment on the $15,000 note and fore-
closing the mortgage given to secure the same. It is claimed
that the corporation was not authorized or empowered by its
charter to make a note and mortgage, and the same was, there-
fore, *ultra vires* and void. In the absence of any restrictive
provision, either in the charter or in the laws of the state un-
der which it was organized, a corporation such as the one in
question is not prohibited from executing a note or mortgage
by reason of the fact that the charter itself does not expressly
authorize such an act. It is a necessary power that exists by
implication of law, and as incident to its right to incur an
indebtedness. Cook on Corporations, sec. 779, and cases cited.

It is further claimed that the note and mortgage were given
by the corporation in payment for the purchase of shares of
its own stock from Gleeson, a director; that the corporation
was not authorized or empowered by its charter to purchase
its own stock; and that the transaction was therefore *ultra
vires.* It is claimed that Reilly was acting in this transaction
on behalf of Costello, and that Reilly had full knowledge of
all the facts, and that his knowledge must be imputed to Cos-
tello; that at the time of making the note and mortgage the
company had no profits in its business, and no surplus; that
the mortgage covered all the property of the company, and
was virtually a conveyance of all the company's property to
Costello for the benefit of Gleeson, in effect making Gleeson
a preferred stockholder, in fraud of the other stockholders
and creditors. We think the evidence discloses that, while
Reilly was the local attorney for the company, he was also the
legal adviser of Costello, acting generally for him, and that
in the matter of the loan in this instance he was acting as the
representative of Costello, and that his knowledge must be

imputed to Costello.  It is shown that Reilly had knowledge
that the company intended to "buy Gleeson out" and to pur-
chase his stock.  Reilly further had knowledge of the action
of the stockholders and the board of directors in regard to the
authorization of the transaction; but there is no evidence that
Costello or Reilly had any knowledge that the company at
the time was involved, or that the transaction in effect made
Gleeson a preferred stockholder, in fraud of other stockholders
or creditors, as claimed by the appellants, or that such condi-
tions as a matter of fact existed.  In England it seems to be
the rule that at common law a corporation may not purchase
shares of its own stock.  The objection usually urged to such
a transaction is that by such purchase the corporate funds
are expended, and no property is received by the corporation
except the right to resell.  In this country, while some states
forbid it, the better rule seems to be that, in the absence of
statutory restriction, and where there is no statutory liability
on the stock, a solvent corporation may in good faith pur-
chase its own stock, subject to the right of creditors, upon a
showing that they have been injured thereby, and in some
instances of nonassenting stockholders, to have such purchase
declared illegal.  Cook on Corporations, sec. 310 et seq.; *Lowe*
v. *Pioneer Threshing Co.* (C. C.), 70 Fed. 646; *Clapp* v.
*Peterson,* 104 Ill. 26; *Blalock* v. *Kernersville Mfg. Co.,* 110
N. C. 99, 14 S. E. 501; *City Bank of Columbus* v. *Bruce,* 17
N. Y. 507; *First Nat. Bank* v. *Salem Co.* (C. C.), 39 Fed. 89;
*New England Co.* v. *Abbot,* 162 Mass. 148, 38 N. E. 432, 27
L. R. A. 271; *Chicago etc. R. R. Co.* v. *Marseilles,* 84 Ill. 643;
*Farmers' Bank* v. *Champlain Transp. Co.,* 18 Vt. 131; *Iowa
Lumber Co.* v. *Foster,* 49 Iowa, 25, 31 Am. Rep. 140; *Shoe-
maker* v. *Washburn Lumber Co.,* 97 Wis. 585, 73 N. W. 333.

In the case before us, we think the purchase by the com-
pany of its stock was a valid one, as against the corporation.
It was done in the discretion of the officers of the company
in good faith, and in the exercise of their control of the affairs
of the company, for the purpose of getting rid of a super-
intendent, the owner of a small amount of stock, whose man-
agement of the company was believed to be injurious.  At
the time of the purchase there is no evidence that the com-
pany was insolvent, or that any of the officers or directors of
the company, or any of its stockholders had reason so to be-
lieve, or that Costello or Reilly had any knowledge on the
subject whatever.  The answer of the defendants in terms

alleges the insolvency of the company, but also that Gleeson concealed from the officers, directors, and stockholders of the company the real condition, and that he at the time represented to them that the company had no debts other than to him. There is no evidence that any false representations were made by Gleeson. The only evidence as to the financial condition of the company at the time shows it to have had about $12,000 of debts due to Gleeson and some $650 due to Reilly, and that it had ore and matte of the value of some $36,000 or more, in addition to the value of the mining claims themselves. In this case, no proof was offered of any statute of West Virginia on the subject and no Arizona statute prohibits such purchase. In the absence of any statute prohibiting the purchase by a company of its own stock, such purchase is a transaction not *per se* void; but its validity depends upon the circumstances of the case. The transaction might in some instances be avoided by stockholders who did not assent, if injured. It might be avoided by creditors who were injured. But there are no such facts in the record before us of the condition of the company at the time when the purchase of this stock was made as would warrant us in declaring such purchase illegal at the instance of the corporation. As to the nonassenting stockholders, if, waiving the question of laches and considering them to be here rightfully complaining because of the defense in their behalf made by the company, there is no proof of any loss or injury to such stockholders by reason of the transaction. The defendant the Arizona corporation in its answer claims to be the assignee of the creditors who proved their claims in the bankruptcy court, and to stand in their shoes; but no evidence of the assignment to that company of any claims is in the record, and, further, no proof of the existence of any such claims or creditors at the time of the execution of the note and mortgage, or, indeed, of any bankruptcy proceedings at all, further than the fact that the company was adjudged a bankrupt in 1903, was offered. We find no ground, therefore, upon which the transaction may be avoided as an illegal purchase of stock by the corporation.

It is further alleged that the notes and mortgage are invalid for the reason that no proper notice was given of the special meeting of the stockholders, and that all the stockholders of the company did not vote for the resolution. The evidence shows that the total outstanding shares of the stock of the

company were 145,495, that all the stockholders were actually notified of the meeting and that of such amount 133,480 shares were voted at the meeting in favor of the transaction; the owners of 12,015 shares not voting or being present in person or by proxy.    It therefore appears that, while the great majority of the stock was voted in favor of the transaction, a small minority was not present and did not by vote assent to it. It is alleged that the call for the meeting was invalid, in that the object of the special meeting was not stated in the call. If it be that the notice of the special stockholders' meeting was insufficient in not setting forth the purpose for which the same was called, the mortgage was not invalidated thereby. A directors' meeting was duly called and held, at which the execution of the notes and mortgages was duly authorized. In the absence of any statutory requirement that the assent of the stockholders is necessary, it is the established rule that a corporation may, under the authority of its board of directors duly exercised, without the assent of the stockholders, authorize the execution of such a note and mortgage as a part of the business incident to the corporation and properly carried on by the directors.    Cook on Corporations, sec. 808, and cases cited.    We have not had our attention called to any provisions, either of the West Virginia statutes or the Arizona statutes, that require the approval of such a mortgage by the stockholders.    The assent of the stockholders not being a requisite of the validity of such mortgage, the fact that certain stock was not represented at the meeting, though not properly called, affords no ground to contest the validity of the mortgage or for the reversal of the judgment.

It is further urged that there was no consideration passing from Gleeson to the corporation for the making by the corporation of the note and mortgage to Costello; it being claimed that Gleeson did not transfer the 8,000 shares of stock to the corporation, and could not transfer it by reason of a pooling agreement by the terms of which the stock was held in escrow for a certain length of time after the date of the giving of the mortgage.    It is to be noted that the stock was only a part of the consideration for the arrangement, and that, if the claim alleged were true, it would only be a partial failure of the consideration.    It appears, however, from the evidence in the case, that the stock did come into the possession of the defendants, since a tender of the stock was made in court by them to Costello in connection with their demand for

a cancellation of the notes and mortgage. But in any event the ground alleged would afford no defense for the company upon this note, as against Costello.

The next assignment relates to the alleged error of the court in rendering judgment for the $802.75 expended by Costello in performing the assessment work not done by the company on certain claims. It is claimed by appellants that the mining claims in controversy, of which there were ten, form one group, and that the company had already performed several thousand dollars' worth of work upon one of the claims for the year in question, and that the work so performed was for the benefit of the whole group, and rendered unnecessary any assessment work on the other claims by Costello. However this may have been, as a matter of law, we think Costello, under the facts, was justified in the performance of the work, and that it was a proper subject of recovery in the action. The mortgage provided that the company should "do and perform the annual assessment work on each of the said mines and mining claims not patented hereby mortgaged during the continuance of this mortgage, and in case the said party of the first part shall fail to do and perform said annual assessment work on any of said mines and mining claims, and the said party of the second part shall consider it necessary to do and perform said assessment work on any or all of said mines and mining claims in order to secure the title and right of possession thereto," such expenditure should be a further lien on the mines described by the mortgage. Under this explicit provision of the mortgage, we think Costello was within his rights in performing the assessment work on such claims as the company had omitted to do the work upon, and that he was not, by reason of the performance of a large amount of work by the company on one of the claims, obliged to accept such work as work done for the benefit of all the claims, and thereby risk the chance of an adverse determination of the legal question as to the sufficiency of such work for such purpose thus presented.

It is further urged that the court erred in ordering a sale of the property as an entirety, "for the reason that the same comprised ten separate mining claims, and each claim could be sold separately." The contention of the appellants in this respect seems to be at variance with their contention that the ten claims comprise one group of mines, upon which the assessment work for one would accrue to the benefit of all. We do

not find in the record any application to the trial court to make a sale in parcels, rather than in an entirety, nor any ruling of the court in that respect, or objection in the lower court to the method of sale, nor was it presented in the motion for a new trial. Upon the facts as they are before us, and upon the record, we are not disposed to review the action of the trial court in its determination as to the method of sale. Furthermore the fact of the lien on the property of the second mortgage, not yet due, may have properly had weight with the court in the determination of the method of sale and the application of the proceeds, and the court's control thereof.

The court refused the application of the defendant companies for an accounting between Gleeson and the West Virginia company, and for a reference for that purpose; and the appellants claim that this was error, since they had a right to have determined what recovery should be had by the company against Gleeson on account of any judgment that might be rendered in favor of Costello against the company. Apart from the fact that no circumstances had been developed upon the trial that made necessary or proper the ascertainment of such facts by means of a reference, rather than by proof adduced in court, the facts sought to be thus proved would have afforded no defense upon this note as against Costello, and were not within the issues in the action. The court was right in denying the application.

It is urged that the court erred in refusing to allow the testimony of the witness Mack to stand as to representations made to him by Gleeson with respect to the indebtedness of the company at the time in question, and as to Mack's reliance upon such statements. It is true that such testimony might have supported the allegation of the answer that Gleeson made representations to the officers of the company that the company was at the time solvent, and that Mack relied thereon; but, whether made or not, such representations, and their effect upon the officers, were not material, in the absence of proof of insolvency or financial embarrassment of the company.

The defendants offered in evidence a certified copy of a list of debts proved in bankruptcy against the West Virginia company. The offer was objected to, and was refused. The list is not preserved in the record, and we have no means of knowing whether the document was in itself competent. The evidence was material, if it showed the existence of the debts at

the time of the execution of the note and mortgage. An examination of the reporter's transcript shows that in ruling upon the objection the court said: "I can't admit it in evidence, unless there is something in it or to it whereby we can determine how much of it existed on January 9th, and how much accrued afterward. You present me a list of accounts in 1903, without any distinguishing marks on them. They do not prove anything." The evidence offered, therefore, if competent, seems to have been immaterial, as not tending to prove any indebtedness at the time of the execution of the mortgage.

The nineteenth assignment of error is as follows: "The court erred in rejecting defendants' offer to prove that the Copper Belle Mining Company of West Virginia was largely indebted at the time Gleeson was superintendent of its mining properties, and at the time the mortgage was given to Costello, and that the company thereafter went into the hands of the bankrupt court, and subsequently while in the bankruptcy court, all the creditors' claims were purchased by E. J. Moneuse and thereafter transferred to the Copper Belle Mining Company of Arizona." The evidence referred to in this assignment of error was clearly material, and its exclusion would have been error prejudicial to the appellants. The difficulty with the assignment is that it is not founded upon fact, as no such testimony was excluded. There was no evidence offered at any time of the purchase by or assignment to the Arizona company of the creditors' claims, and no offer of proof thereof refused by the court. The only evidence offered of the financial condition of the West Virginia company at the time of the execution of the note and mortgage was adduced from Gleeson upon his cross-examination by defendants' counsel. The court allowed all the questions put by counsel with regard to such condition to be answered, and the testimony of the witness (which was the only testimony on the subject, except as to the indebtedness to Reilly of $650) showed the assets of the company at the time to be largely in excess of its indebtedness. It is also claimed that the court erred in not admitting in evidence a certified copy of the claim of Reilly filed in the bankruptcy proceedings. This document is not preserved in the record, and we cannot, therefore, determine whether it was admissible or material. But the appellants do not seem to have been injured by its exclusion, as subsequently evidence was introduced which showed that

the indebtedness of the company to Reilly at the time in question was some $650.

Other errors are assigned in regard to the rulings of the trial court in the rejection of evidence, but it is not necessary to consider whether the court was right in the rulings referred to, as the exclusion of the evidence would not, under our view of the case, be prejudicial error.

Passing to the second cause of action in the complaint, relating to the four notes, for $13,250 each, running to Gleeson and assigned by him to Costello, we find numerous errors assigned as to the action of the trial court in respect to this branch of the case. A demurrer was interposed on the ground that, under the allegations in the complaint, neither the principal nor interest on these notes was due at the time the action was brought. The first of the notes was due February 4, 1906 (subsequent to the commencement of this action). The notes were dated February 4, 1902, and each provided that the interest was to be paid yearly at the end of each year, and, if not so paid, to be added to the principal and to draw interest therewith from the date of its accrual. The trial court was of opinion that under this provision the interest was not due, in the sense that would warrant a foreclosure of the mortgage, as there was no provision in the mortgage for default in case of nonpayment of the interest at any time prior to the maturity of the notes; but on the contrary, the notes provided that if the interest was not paid, it should be added to the principal and draw interest. The demurrer, however, was overruled on the ground that, the court having had its attention called to the existence of the notes and the second mortgage lien on the property, it was proper to take evidence of the value of the notes in order that the surplus on the sale, if any, should be held subject to the claims of the second mortgage. Upon the trial the four notes and the mortgage were offered in evidence and objected to, on the ground, among others, that the action was prematurely brought, since none of the notes, or the interest thereon, was then due. The court, in passing on this objection, held that the notes had not yet matured, and that the terms of the mortgage did not provide for the foreclosure of the mortgage because of the nonpayment of the interest at any date before the maturity of the notes, and that the validity of the mortgage did not necessarily enter into the trial of the cause, but, inasmuch as the mortgage had been executed by the company to secure the

payment of the notes, and the holder was thereby placed in the position of a creditor against the property, that the notes would be admitted in evidence for the purpose of establishing the plaintiff as being the holder of the notes and mortgage, and for the purpose, in case a foreclosure was ordered for the collection of the judgment on the first note, of enabling the court to determine the disposition to be made of the surplus; and the court admitted the notes in evidence for that purpose. A similar ruling was made with respect to the second mortgage, covering the notes. Later on, when the witness Costello was under examination, the court again stated that the details regarding the mortgages and notes were not to be gone into; that proof was only to be allowed of the fact that Costello was the owner and holder of the notes and mortgage, and that they had not been paid. Counsel for the defendants offered on the record to prove, and, if given permission to interrogate the witness, to show facts which would establish the contention set up in the answer that Costello was not a *bona fide* holder for value of the notes. The court excluded the evidence, and any evidence other than that of the existence of the notes and mortgage. In rendering judgment, the court did, however, render judgment, not only for the $15,100 note given to Costello, with interest thereon, and for the amount expended by him for assessment work (the items embraced in the first cause of action), but also rendered judgment for the sum of $3,523.07, an amount found to be due the plaintiff on his second cause of action for interest that had accrued on the four notes in question, and ordered a foreclosure as against the defendants to satisfy this amount, as well as the amount found due under the first cause of action. The reason for this action of the trial court seems to have been that a further examination of the mortgage given to secure the four notes in question disclosed the fact that by the terms of the mortgage, in case default was made in the payment of interest for the term of three months after such interest became due, then the mortgagee was empowered to sell the property covered by the mortgage. Whatever may be the legal effect of the provisions of the notes and mortgage, and the right of the plaintiff to secure in this action a judgment for the amount of interest then due, we think, upon the record in the case, that the trial court erred in granting judgment for any amount under this second cause of action. The record is clear that the court, not only all through the trial of

the case considered that the second cause of action was not before it for adjudication, but it is clear that the defendants were precluded by the action of the trial court in that regard from offering testimony which was material to their defense with respect to Costello's title thereto. Upon such a state of the record it would not be just to the defendants to preclude them from making the proof desired and contesting the validity of the notes and mortgage in question, as the judgment would do *pro tanto.* The action of the trial court in holding that the second cause of action, having been prematurely brought, was not properly before it in this action, not being brought here for review by the plaintiff, must be held to be correct.

The judgment of the district court is therefore modified, in so far as it adjudges the defendants to be indebted to the plaintiff in the sum of $3,523.07, or any other sum, upon the second cause of action set forth in the complaint, or provides for a foreclosure of the mortgage to satisfy the same, without prejudice to the plaintiff to enforce such rights as he may have thereunder. In all other respects, the judgment is affirmed, with costs in this court to the appellants.

SLOAN and CAMPBELL, JJ., concur.