## In re HAMMAN–McFARLAND LUMBER COMPANY, an Arizona Corporation, Debtor.

### Wallace PERRY, Trustee, Plaintiff-Appellant,

v.

### Larry HAMMAN et ux., et al., Defendants-Appellees.

### No. 77–2913.

United States Court of Appeals, Ninth Circuit.

As Amended on Denial of Rehearing April 11, 1980.

James M. Marlar, Rawlins, Ellis, Burrus & Kiewit, Phoenix, Ariz., for plaintiff-appellant.

Henry Jacobowitz, Kaplan, Kaplan, Jacobowitz & Hendricks, P.A., Phoenix, Ariz., for defendants-appellees.

Before KILKENNY, ANDERSON and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

This appeal is from the trial court's judgment denying recovery by the receiver in bankruptcy proceedings of deferred payments made by the debtor corporation to some of its shareholders under a stock redemption agreement. The receiver brought the claim under § 70(e) of the Bankruptcy Act, challenging the validity of the payments under applicable Arizona law. The trustee, substituted for the receiver, urges here that the bankruptcy court and the district court erred in upholding the validity of the payments under Arizona law.

The corporation, Hamman-McFarland Lumber Company, was a closely held Arizona corporation. In order to resolve an inter-family dispute the shareholder family members executed a stock redemption agreement in 1971 dividing the corporation. Under this agreement the departing share-

holders, appellees, sold their shares back to the corporation for an agreed price of $418,-506. Although at the time of the agreement the corporation apparently did not have sufficient earned surplus to cover the entire redemption price, it was solvent and had a net worth sufficient to enable full payment without rendering the corporation insolvent.

Soon after execution of the agreement the corporation paid over 70 per cent of the redemption price in cash and other assets and executed a promissory note for the balance. The corporation secured this note with a duly recorded mortgage on real property owned by the corporation.

The corporation made its final payment on the note in June, 1975. Shortly before that time, however, the corporation initiated Chapter XI bankruptcy proceedings. We assume for purposes of this appeal that one or more of the later payments were made at a time when the corporation was insolvent.

In this appeal the trustee argues that, pursuant to Arizona law, he is entitled to recover on behalf of creditors those deferred stock redemption payments made at a time when the corporation was insolvent.

If this case had arisen under the currently applicable Arizona statute, A.R.S. § 10–006, effective in 1976, appellant may have been entitled to recover all of the redemption payments. That section restricts stock redemption purchases to the extent of the corporation's unreserved and unrestricted earned surplus.

All of the pertinent facts in this case, however, occurred prior to the passage of that statute. As a result, we must look to the sparse, earlier Arizona law relating to stock redemption agreements. That law antedates statehood and, in fact, consists of only two cases, *Copper Belle Mining Co. v. Costello*, 11 Ariz. 334, 95 P. 94 (1908) (*Copper Belle I*), and *Copper Belle Mining Co. v. Costello*, 12 Ariz. 318, 100 P. 807 (1909) (*Copper Belle II*).

The *Copper Belle* cases also involved an agreement by a corporation to repurchase its shares with cash and promissory notes secured by mortgages. Unlike this case, however, the *Copper Belle* decisions considered a challenge to the transaction by the holder of the note rather than claims asserted on behalf of creditors who were strangers to the redemption transaction.

In *Copper Belle I*, the Arizona Supreme Court upheld the validity of the stock redemption agreement itself since the corporation was solvent at the time the agreement was executed. The trustee now concedes that pursuant to this applicable Arizona law the initial validity of the redemption agreement in this case is governed by the solvency of the corporation, and not by the availability of earned surplus. Since the corporation in this case was solvent at the time of the agreement, the trustee no longer challenges the initial validity of the redemption transaction.

In *Copper Belle II*, the Arizona court considered the effect of the corporation's bankruptcy on deferred redemption payments. The court held that the subsequent bankruptcy of the corporation did not extinguish the debt and the lien created by the mortgage since the agreement was valid at its inception. A similar result was reached by this Court in *In re National Tile & Terazzo Co.*, 537 F.2d 329 (9th Cir. 1976), involving a California transaction.

Pointing to language in *Copper Belle II* that the stock redemption was valid so long as there were no existing creditors "injured" by the redemption agreement, the trustee here argues that the existence of corporate creditors in this case permits successful challenge. The opinion in *Copper Belle II*, however, looks to the time of the redemption agreement itself in determining whether creditors are "injured." Since the corporation in that case had assets in excess of its liabilities at the time of execution of the agreement, the court upheld the validity of the transaction even after the corporation later went bankrupt. Applying this law to the facts of this case, we must uphold the validity of both the initial agreement and all later payments due to the

corporation's solvency at the time of the agreement. *See In re National Tile & Terazzo, supra.*[1]

The trustee makes the further argument on appeal that, even though the corporation was solvent at the time of the execution of the notes and mortgage and even though the mortgage was recorded, later creditors were prejudiced by the failure of the recorded documents to specify that the underlying indebtedness was a stock redemption agreement. The trustee offers this distinction on the ground that, unlike the context of the usual indebtedness, in a stock redemption the corporation receives nothing of value to general creditors in exchange for incurring the debt. Therefore, the trustee urges that those creditors should be regarded as "injured" within the meaning of *Copper Belle II.* In support of this position, the trustee relies upon the Second Circuit's decision in *In re Flying Mailmen Service, Inc.*, 539 F.2d 866 (2d Cir. 1976). A divided court there held that the filing of notice of indebtedness was not sufficient in the absence of express notice that the underlying indebtedness was a stock redemption. A strong dissent argued against the wisdom of distinguishing between different kinds of indebtedness for purposes of notice to creditors.

We need not dwell on the merits of that dispute, for under the Arizona law applicable to this appeal it is clear that the validity of a redemption agreement secured by a recorded mortgage is measured by whether or not the corporation was solvent at the time of the transaction, even though bankruptcy may follow. The *Copper Belle* decisions establish that no creditor may claim injury if the corporation was solvent at the time of the transaction, as was true in this case.

Affirmed.

1. *But see McConnell v. Estate of Butler,* 402 F.2d 362 (9th Cir. 1968), which held that stock repurchase agreements, valid at their execution, are nevertheless unenforceable under California law if there are insufficient assets at the time the actual payment is to be made. We

follow here the rationale of the Arizona Court in *Copper Belle II* in holding that the effectiveness of an agreement secured by a recorded mortgage is measured solely by the financial condition of the company at the time the agreement was made.