Farmers' and Mechanics' Bank *v.* Champlain Trans. Co.

the public streets. If the oil would stand the climate of Vermont without chilling, when exposed, as it must be, in its use in the various business of life, in which it becomes necessary that it should be used, this, we think, is all that the plaintiff has a right to claim in this particular.

The judgment of the county court is affirmed.

## FARMERS' & MECHANICS' BANK *v.* CHAMPLAIN TRANSPORTATION COMPANY.

[Same Case, 16 Vt. 52.]

In a suit brought by a bank against a common carrier, to recover for a package of bank bills entrusted to the carrier and lost by him, the teller of the bank, who delivered the package to the carrier, is a competent witness for the plaintiffs.

And in such suit it was held, that the cashier of the bank, who was, at the time of the delivery of the bills to the defendants, a stockholder in the bank, was a competent witness for the bank, it appearing that the bank had executed and delivered to the cashier a release of all liability to them on account of the loss of the bills in question, and that the cashier had transferred to the bank, upon sufficient consideration, the shares owned by him in the capital stock of the bank.

A clause in the charter of a banking corporation, which prohibits the corporation from dealing or trading, directly, or indirectly, in buying or selling any goods, wares, or merchandize, or commodities whatsoever, is in derogation of the common and ordinary powers of the corporation, and should be construed strictly. A *bona fide* sale and transfer to the bank, by a stockholder, of stock owned by him in the bank, will divest him of all interest arising from his having been the owner of such stock, so as to render him a competent witness for the bank, notwithstanding the charter of the bank may contain such prohibitory clause.

The duty and liability of a common carrier, in regard to the delivery of goods entrusted to him, may be modified by the particular usage of the carrier; and if he rely upon and prove such usage, as a defence in an action brought against him by the consignor of goods, it is not necessary that he should prove that the consignor had knowledge of such usage.

TRESPASS ON THE CASE. It was alleged in the declaration, that the defendants were common carriers on Lake Chamalain, between Burlington and Plattsburg, N. Y., and that the plaintiffs delivered to the defendants a package of bank bills, amounting to $1109, to be carried by the defendants from Burlington to Plattsburg, and there to be delivered to Richard Yates, Esq., cashier of the Clinton County Bank, to whom the package was directed; and the plaintiffs averred, that the package was never delivered as directed, but was lost through the carelessness and negligence of the defendants. Plea, the general issue, and trial by jury,—BENNETT, J., presiding.

It appeared, on trial, that the package in question, which was directed to " Richard Yates, Esq., Cashier, Plattsburgh, N. Y., " was delivered on the 5th day of June, 1839, by one Seymour, who was teller in the plaintiffs' bank, to the captain of the defendants' steam ferry boat, which run daily from Burlington to Plattsburgh, and thence to St. Albans, and that, when the boat arrived at Plattsburgh, the captain delivered the package to one Ladd, the wharfinger, and that it was lost, or stolen, while in Ladd's possession. To prove the contract between the parties, the plaintiffs offered Seymour as a witness, and the defendants objected to his competency, it appearing that he had given a bond for the faithful performance of his duty as teller, and that he delivered the package in question in pursuance of the directions of the cashier,—but that it was the duty of the cashier, and not of the teller, to attend to the performance of such business. The court overruled the objection, and the testimony of the witness tended to prove, that the defendants agreed to deliver the package in question at the bank in Plattsburgh; but upon this point there was contradictory evidence. Evidence was also offered by the plaintiffs, and admitted by the court, tending to prove that the defendants, by the course and usage of business, were common carriers of bank bills, as well as of ordinary freight and passengers.

The defendants introduced evidence tending to prove, that it had been and was, at the time of the receipt by them of the package in question, the constant and unvaried usage and custom of carriers on Lake Champlain, to deliver packages of bank bills, entrusted to them, to the wharfinger, on the wharf; that it had been the con-

stant and unvaried usage of the defendants, in all the steam boats owned by them on the lake, to deliver packages of bills to the wharfinger, on the wharf, without any notice to the consignee; and particularly, that it had been, and, at the time in question was, the constant and unvaried custom and usage of the defendants, on the said steam ferry boat, on its way from Burlington to St. Albans, when stopping at Plattsburgh, to deliver all packages of bills for the Clinton County Bank to the wharfinger, on the wharf, without giving any notice to the consignee; and that this custom and usage was known to Dr. Peck, who was a director and president of the plaintiffs' bank, and also to the cashier and other officers of the bank.

To rebut this evidence the plaintiffs offered, among other witnesses, Charles F. Warner, their cashier, to whose admission the defendants objected, for the reason that he had given a bond to the plaintiffs, conditioned for the faithful performance of his duty as cashier, and also for the alleged reason, that he was a stockholder in the plaintiffs' bank. The witness stated, on *voir dire*, that he had executed such bond, and that he was a stockholder in the bank at the time this suit was commenced, but that subsequently, in pursuance of a vote of the directors of the bank, he had sold and transferred to the bank his said stock, for their sole and exclusive use, and that he had received a full consideration therefor, and that this was not done for the purpose of paying, or securing, any previous debt. It also appeared, that the plaintiffs had executed and delivered to the witness a release from all liability to them for any loss, or damage, arising from the loss of the money in question. The witness was thereupon allowed to testify.

It appeared, from the testimony, that the transmission of packages of money, in all cases like the present, and the making up and regulation of the exchange accounts, &c., were the exclusive business of the cashier, aided by the teller, and never, except casually, came to the knowledge of the president or of any director of the bank.

The defendants, among other things, requested the court to instruct the jury, that, if they found, that the usage of the defendants, above mentioned, was known to the president of the bank, it was, in point of fact, notice to the bank. But upon this point the court

instructed the jury, that notice of the usage claimed might be express, or might be implied from the circumstances of the case, and that notice to the cashier of the bank, and also to the teller, in this particular case,—as he was the agent to deliver the package of bills to the captain of the boat,—or to either of them, was a notice to the bank itself; but that, if Dr. Peck, the president of the bank, had notice of such a usage as was claimed to exist, this was not of itself notice to the bank, simply because he was a director and president of the bank, but that such evidence was competent, as tending to prove notice to the bank ; and that if, from this fact, and from the long continuance, notoriety and uniformity of the usage, and from all the circumstances attending this case, they were satisfied, that the board of directors, or a majority of them, had knowledge of the existence of such usage, this was sufficient to charge the bank with notice ; and that it was immaterial, whether such directors came to the knowledge of such usage when in session and acting as a board of directors, or upon other occasions and at other times. But the jury were told, that if Dr. Peck had had the agency of the affairs of the bank committed to him by the directors, and had been intrusted with the transmission of the money of the bank to one place and another, as occasion should require, then notice to him would of itself be notice to the bank.

The jury returned a verdict for the plaintiffs. Exceptions by defendants.

*C. Adams* and *D. A. Smalley* for defendants.

1. There are but two possible modes of proving the undertaking of common carriers,—one by showing an express contract, the other by proving those facts, from which a contract can be inferred. The receipt of packages may imply an obligation to deliver them, but *when, how,* or *where,* is not at all indicated thereby, but must depend entirely upon some *express* contract, or upon the general custom, or the usage that has prevailed between the parties. Story on Bail. 509, 513. The manner of conveyance must vary according to the nature of the conveyance and the articles conveyed. A foreign ship, or steamboat, cannot deliver to consignees personally, and it is not to be *presumed,* that they contracted to employ agents for the purpose of delivery beyond the landing place. *Ashley* v.

*Kellogg,* 8 Conn. 223.  Story on Bail. 539.  *Farmers' & Mech. Bank* v. *Champ. Tr. Co.,* 16 Vt. 52.  *Garside* v. *T. & M. Nav. Co.,* 4 T. R. 581.  In the case of ordinary vessels delivery of merchandize at the common landing places at the ports of delivery is sufficient, unless there is a special contract for a different delivery. *Chickering* v. *Fowler,* 4 Pick. 371.  *Blin* v. *Mayo et al.,* 10 Vt. 56. The delivery of the package, in this case, to the wharfinger at the wharf was a fulfilment of the defendants' undertaking.  Story on Bail. 453, 454.  *Gibson* v. *Culver,* 17 Wend. 305.  *Ashley* v. *Kellogg,* 8 Conn. 223.  It is very clear, that there was no *special* contract made.  It is not pretended, that any *general custom* prevailed, from which any such undertaking can be inferred.  And the case shows, that, so far from their being any usage, which had prevailed between these parties, from which such contract can be inferred, the defendants showed an *unvaried custom and usage* to deliver such packages to the wharfinger at the wharf.

The court below, however, seems to have sanctioned the principle, claimed by the plaintiffs to exist, that the receipt of a package of bills implies an obligation to deliver to the consignee personally.  This proposition rests on no adjudged case.  It was discussed in the leading case of *Hyde* v. *T. & M. Nav. Co.,* 5 T. R. 389, and the court were divided in opinion, and the case turned on another point.  Chancellor Kent alludes to it, (2 Kent 604) but expresses no opinion.  Judge Story also alludes to it (3 Story's Bail. 539) and says that it has received the sanction of other distinguished judges; but it is remarkable, that none of the cases cited by him bear out his remarks.  *Bodenham* v. *Bennett,* 4 Price 31.  *Garnett* v. *Willan,* 7 E. C. L. 19.  *Duff* v. *Budd,* 7 E. C. L. 403.  *Stephenson* v. *Hart,* 15 E. C. L. 47.  *Birkett* v. *Willan,* 2 B. & Ald. 356.  All these cases turned upon a misdelivery by *gross negligence;* and in *Birkett* v. *Willan,* ABBOTT, Ch. J., held, that the carrier would fully discharge his duty by a delivery at his office.

2.  It is, however, insisted, that the carrier must deliver according to the *direction,* and that, when there is no direction, except the address on the parcel, *that* must be his direction.  This proposition cannot be sustained; for in a great variety of cases it would be impossible.  The cases cited by the plaintiffs in this case (16 Vt. 52) fall short of it.  *Rich* v. *Kneeland,* Cro. Jac. 330.  *Taylor* v. ——

2 Ld. Raym. 792. *Hatchwell* v. *Cooke*, 1 E. C. L. 488. *Birkett* v. *Willan*, 2 B. & Ald. 356. *Stephenson* v. *Hart*, 15 E. C. L. 47. *St. John* v. *Van Santvoord*, 25 Wend. 660. On the contrary, in *Stephenson* v. *Hart*, BEST, Ch. J., left it to the jury to say, whether " the defendants delivered the box according to the *course of their business and duty.*" And in *Birkett* v. *Willan*, ABBOTT, Ch. J., said, that " a carrier, having a box directed to ' J. Wortly, Exeter,' (as this was to ' R. Yates, Plattsburgh ') was not bound to carry the package to any place." See, also, *Wardell* v. *Mourillyan*, 2 Esp. R. 693 ; *Farm. & Mech. Bank* v. *Champ. Tr. Co.*, 16 Vt. 52. In every case, where it has been adjudged, that there was an obligation to deliver to consignees personally, the determination has been founded, either upon an *express* contract, the general custom of the place, or the usage, that had prevailed between the particular parties. *Hyde* v. *T. & M. Nav. Co.*, 5 T. R. 389. *Golden* v. *Manning*, 2 Bl. R. 916. *St. John* v. *Van Santvoord*, 25 Wend. 660. *Ashley* v. *Kellogg*, 8 Conn. 223. 2 Kent 604, 605, (n.) Story on Bail. [3d Ed.] 539. *Catley* v. *Wintringham*, Peake 150. *Wardell* v. *Mourillyan*, 2 Esp. 693. Abbot on Ship. 214, 246, 249. *Gatliff* v. *Bourne*, 33 E. C. L. 364. *Gibson* v. *Culver*, 17 Wend. 305.

3. It was not material to the defence, to show that the plaintiffs had knowledge of the custom and usage, that had prevailed as to the manner of delivering packages of bills. If the receipt of the package implied an obligation to deliver at Plattsburgh, it *must* be, in the absence of an express contract, to deliver according to general custom, or particular usage ; and the plaintiffs were bound to take notice of such custom, or usage. *Farm & Mech. Bank* v. *Champ. Tr. Co.*, 16 Vt. 52. Story on Bail. 533, 534. *Colepepper* v. *Good*, 24 E. C. L. 370. *Barber* v. *Brace*, 3 Conn. 9. *Crosby* v. *Fitch et al.*, 12 Conn. 410, 432. *Rushforth's Assignees* v. *Hadfield*, 6 East 519. *Kemp et al.* v. *Coughtry et al.*, 11 Johns. 107. *Lethulier's Case*, 2 Salk. 443. *Noble* v. *Kennoway*, 2 Doug. 510. *Valence* v. *Dewar*, 1 Camp. 503. *Ougier* v. *Jennings*, 1 Camp. 505. *Coit et al.* v. *Com. Ins. Co.*, 7 Johns. 385. *Halsey* v. *Brown*, 3 Day 346. *Sewall et al.* v. *Allen*, 6 Wend. 333. Story on Bail. [3d Ed.] 539–541. *Gibson* v. *Culver*, 17 Wend. 305. *Hyde* v. *T. & M. Nav. Co.*, 5 T. R. 389. *Catley* v. *Wintringham*, Peake

150.   *Wardell* v. *Mourillyan*, 2 Esp. R. 693.   *Gatliff* v. *Bourne*, 33 E. C. L. 364, and Abbot on Ship., there cited.   2 Kent 604, 605. *Stephenson* v. *Hart*, 15 E. C. L. 47, 50.

4.   But if notice to the bank was necessary, we insist, that the notice was sufficient.

5.   Seymour and Warner were both interested, and were therefore improperly admitted to testify.

*C. D. Kasson* and *Asahel Peck* for plaintiffs.

1.   All the questions now raised, as to the competency of the witnesses Seymour and Warner, were expressly made in the former bill of exceptions, and were determined for the plaintiff at the last term of this court. 16 Vt. 52.   1 Greenl. Ev. 503, § 430.

2.   The charge of the court below, as to what would constitute notice to the plaintiffs of the usage, claimed by the defendants to exist, was correct.   *Hider* v. *Dorrell*, 1 Taunt. 383.   *Crosse* v. *Smith*, 1 M. & S. 555.   Ang. & Am. on Corp. 247–249.   *Hayward* v. *The Pilgrim Soc.*, 21 Pick. 277.   *Washington Bank* v. *Lewis*, 22 Pick. 24–31.   *Com. Bank* v. *Cunningham*, 24 Pick. 276.   *Housatonic & Lee Banks* v. *Martin et al.*, 1 Met. 308.   *Fulton Bank* v. *Benedict*, 1 Hall 495, 557.   *Fulton Bank* v. *N. Y. & Sh. Canal Co.*, 4 Paige 136.   *Hayden et al.* v. *Middlesex T. Co.*, 10 Mass. 403.

3.   The plaintiffs must have had knowledge of such usage, in order to affect them by it.   This was never doubted.   Even in *Gibson* v. *Culver*, 17 Wend. 305, *Blin* v. *Mayo et al.*, 10 Vt. 56, and *Farm. & Mech. Bank* v. *Ch. Tr. Co.*, 16 Vt. 52, such knowledge was the only ground, upon which the courts held the usage admissible.   It is only on the ground, that the parties knew of the usage, and are therefore supposed to have contracted with reference to it, that it is ever admissible; and it is a matter of fact, for the jury to find, whether, in any given case, the parties *in fact* contracted with reference to it.   This is so, even in reference to *general* usages. *Rushforth* v. *Hadfield*, 7 East. 228.   *Wood* v. *Hickok et al.*, 2 Wend. 504.   But in the case of a *usage of the party* it was never pretended, that it could avail any thing, unless it was known to the party to be charged therewith.   *Renner* v. *Bank of Columbia*, 5 U. S. Cond. R. 697.   *Lincoln & Kennebec Bank* v. *Page*, 9 Mass. 157.   *Eager* v. *Atlas Ins. Co.*, 14 Pick. 143, 144.   Story on Bail.

18

§ 545. And the usage must also be to so deliver *at the risk of the consignee.* Story on Bail. § 543. A carrier, whose liability is fixed by law, cannot change the law by his own act. *Allen* v. *Sewall*, 2 Wend. 327. *Dwight* v. *Brewster*, 1 Pick. 50. *St. John* v. *Van Santvoord*, 25 Wend. 660. *Ostrander* v. *Brown*, 15 Johns. 39.

The opinion of the court was delivered by

KELLOGG, J. At the trial of this case in the county court several exceptions were taken by the defendants' counsel to the rulings and decisions of that court, which have been elaborately argued in this court and are now to be considered.

1. It is objected, that Martin A. Seymour was an incompetent witness. He was a teller in the plaintiffs' bank and had given bonds for the faithful performance of his duty. This did not render him incompetent. It was no part of his official duty to deliver the package of bills in question, and if it were, it would not make him an incompetent witness. In the delivery of the package to the captain of the steam boat he acted as the agent, or servant, of the cashier, or of the Bank, and in either case he was a competent witness. 1 Phil. Ev. 94. 2 Johns. 189. 13 Mass. 381. The objection, if it has any weight, goes only to his credibility, and not to his competency, and consequently cannot prevail.

2. It is farther urged, that the court below errred in admitting the testimony of Charles F. Warner, upon the ground that he was cashier of the bank, had given bonds for the faithful execution of his office, and was a stockholder in the bank. It appears from the bill of exceptions, that the plaintiffs, prior to the admission of Warner as a witness, delivered to him a release, executed in due form, thereby discharging him from *all liability* to them for any loss, or damage, arising out of the loss of the money in question; and that Warner had sold and transferred his stock to the bank. So far, then, as his interest arose from his official relation to the bank, as cashier, it would seem to have been fully removed by the release. His official bond did not increase, or diminish, his interest. His personal liability to the bank would be the same without the bond, as with it.

But it has been urged in argument, that his interest as a stockholder remained, notwithstanding his sale and transfer to the bank, upon the ground that the bank was incapable of taking the stock by purchase. This objection is founded upon the eleventh section of

the act incorporating the bank, which prohibits the corporation from dealing, or trading, directly, or indirectly, in *buying*, or *selling*, any goods, wares, or merchandise, or commodities whatsoever. The power to purchase and hold property is one of the ordinary incidents of a corporation. This power existed at common law, as incident to every corporation, unless they were specially restrained by their charters, or by statute. Co. Lit. 44. This power is expressly given to the plaintiffs by the first section of their act of incorporation; and the prohibition contained in the eleventh section, being in derogation of the common and ordinary powers of the corporation, should be construed strictly. We do not think that the eleventh section applies to a case like the one under consideration. But it is not necessary for the court to inquire, or decide, in the present case, whether the bank, in the purchase of the stock in question, transcended the limits of their charter. It is sufficient, for the purpose of deciding the point under consideration, that, in the judgment of the court, the bank was capable of taking the stock by purchase, and consequently, that a *bona fide* sale and transfer of the stock, by Warner, divested him of all interest as a stockholder in the bank. There was, therefore, no error in the decision of the county court in admitting him as a witness.

The remaining questions in the case arise upon the instructions given by the court to the jury. The defendants were common carriers by steam boats upon Lake Champlain, and as such received the package of money, for the loss of which this suit is brought. The case involves an inquiry as to the extent of the duty and liability of common carriers. And it has been urged in the argument, that the defendants, having received the package, directed to the cashier of the Clinton County Bank at Plattsburgh, were bound to deliver it to the *consignee*, or at least to deliver it at a proper place and give *notice thereof* to the *consignee*; and that the usage and custom of the defendants, to deliver packages of money to the wharfinger, upon the wharf, in order to be available to the defendants by way of defence, must have been known to the plaintiff; and the court below, in their instructions to the jury, seem to have so considered the law. This, we think, was an incorrect view of the law, as applicable to the case.

In the absence of any special contract between the parties, in relation to the subject, the duty and liability of the defendants must

be determined by the law applicable to carriers of *this description.* This liability may be modified by contract, by the general usage of the business, or by the defendants' particular usage.   This was evidently the opinion of this court, when the case at bar was before them upon a former occasion.   16 Vt. 52.   Indeed, the case was then opened, upon the ground that the evidence of custom and usage, offered by the defendants, should have been received.   It is true, that, upon that occasion, the defendants offered to prove, that the custom and usage, upon which they relied, were known to the plaintiffs ; but it is very obvious, that the learned judge, who then delivered the opinion of the court, did not consider it material, that the usage and custom should be known to the plaintiffs.   He says, " The court, however, are not called upon to decide, whether this knowledge is of any importance.   If the evidence had been admitted, and it had fallen short of establishing the fact of personal knowledge in the plaintiffs, I am not prepared to say that the defendants would be liable."

But, whatever may have *heretofore* been the views of the court upon this point, a majority are now of opinion, that it is not necessary to prove, that the plaintiff had personal knowledge of the usage, in order to make it available to the defendants.   The case of *Van Santvoord* v. *St. John et al.,* 6 Hill 157, has a direct bearing upon the case at bar.   The doctrine of that case is in substance this,—that, where goods are delivered to a carrier, marked for a particular place, without any directions as to their transportation and delivery, except such as may be inferred from the marks themselves, the carrier is only bound to transport and deliver them *according to the* established usage of the business, in which he is engaged, whether the consignor knew of such usage, or not.   With the reasoning and authority of that case we are well satisfied.   It is founded in good sense and is sustainable upon principle.

The case at bar was put to the jury by the county court, upon the supposition, that, in order to enable the defendants to avail themselves of the usage, upon which they relied, as a defence, the jury must find that the plaintiffs had knowledge of such usage. This, we think, was clearly erroneous, and for this error the judgment of the county court is reversed.

BENNETT, J., dissenting.