## PURCHASE BY A CORPORATION OF ITS OWN STOCK.

Circuit Court of Montgomery County.

J. B. SIDERS v. THE GEM CITY CONCRETE COMPANY ET AL.

Decided, December 23, 1910.

*Corporations—Purchase by, of Their Own Stock, Not Illegal, When—
Nature of the Transaction—Action on Note Given by Corporation
in Payment for Its Own Stock—Defenses—Estoppel—Contracts—
Ultra Vires Acts.*

1. A corporation where not prohibited by its charter, or a statute or constitutional prohibition, may purchase its own stock, and there is no statute or constitutional provision in Ohio preventing such purchase.
2. Before such a purchase will be held for naught it must be shown that it was not made in good faith and will result to the injury of creditors.
3. Such a transaction is not *malum in se*, and a note given by the corporation, the consideration of which is the purchase price of such stock, is not *per se* void.
4. If such note includes other considerations than the purchase price of the stock and these can be separated, the note would at most only be void to the extent of the consideration which was included therein for the purchase of the stock.
5. Where a corporation purchases its own stock and gives a note therefor, such transaction so far as the sale and purchase of the stock is concerned becomes an executed contract, and the mere want of power to purchase such stock will not be a good defense in an action against the corporation to collect such note.
6. A corporation, which has purchased its own stock and given a note in payment, and thereafter sells the stock, is estopped from setting up the defense of want of power to make such purchase.

*Munger & Kennedy,* for plaintiff.
*Thompson & Thompson,* contra.

ROCKEL, J.; DUSTIN, J., and ALLREAD, J., concur.

This cause comes into this court on error from the common pleas.  In the court below, plaintiff in error brought suit on an ordinary promissory note, against the defendants the Gem City Concrete Co., W. L. Blocher, A. F. Meeker and Philip J. Rot-

terman and C. E. Clark, endorsers on said note.  The petition did not so state, but it afterwards appeared that said endorsers were at the time endorsement was made, directors of the said Gem City Concrete Co., and that they occupied the relation of accomodiation endorsers.

To this petition an answer was filed, admitting the execution of the note, but alleging that the consideration therefore was a transfer and delivery back to the company of nineteen shares of stock, and further alleging that the company had no power to purchase said stock and that there was no consideration for said note.

To this answer a general demurrer was filed and overruled. Afterwards, however, the Gem City Concrete Co., by leave of court filed an amended answer alleging substantially the same matter and setting up the fact that the plaintiff was the owner of twenty shares of stock in said company and that there was an accounting held between the Gem City Concrete Co. and the plaintiff for money advanced by the plaintiff for various purposes and that the plaintiff had paid for said stock the sum of $950 and that the board of directors of the said company had purchased said stock, and had issued its note to that amount, and that there was no other consideration of said note and that the same was void.

It also filed a claim in the nature of a cross-petition, in which it averred that said plaintiff had subscribed for twenty shares of stock, but had only paid for nineteen, and that there was still due said company the sum of $50, for one share of stock.  To this amended answer and cross-petition, demurrers were filed, which were overruled and exception taken thereto.

Then the plaintiff filed a reply, to which a motion was filed on a number of grounds, which motion was sustained.  Thereupon an amended reply was filed which contained a general denial, and by way of a first defense admitted the incorporation and capital stock, etc., and averred that the consideration of said note set up in the petition was for money advanced to defendant and services rendered, and for the second defense, among other things, denied that the plaintiff ever subscribed for the one share of stock for which judgment was sought and averred

that all of his stock was transferred back to the company, and by the said company re-sold to other persons to this defendant unknown; and that they were estopped, etc. To this a motion was filed, which was sustained, that practically struck the same from the files to which the plaintiff excepted.

The plaintiff then filed a second amended reply, the first defense of which admitted the execution of the note, and denied each and every other allegation of said emended answer. The second defense admitted that the plaintiff was the owner of eighteen shares of the capital stock, and that at a meeting of directors, July 27th, 1906, said directors being the endorsers on the note sued on, that it was agreed with the plaintiff to purchase said stock so held by him, and that in pursuance thereof plaintiff has signed, transferred and surrendered said stock and delivered same to said company, and fully carying out the contract on his part to be performed; said company executed and delivered to this plaintiff said note, endorsed by said directors, as set forth in said petition and canceled said stock; that said company thereafter (December 28th, 1906) bargained and sold all of its authorized capital stock to other parties, including said stock formerly held by this plaintiff, and that the company increased its capital stock without notice to the plaintiff, who was no longer a stock holder.

That said company further did not offer to return said stock to plaintiff, and that it is now not in the possession or control of said company and can not be returned, and that said company is now insolvent.

This second defense on motion of the plaintiff was stricken out, to which exception were taken by the defendant. There was also a general denial in this second amended reply to the matters set up in the cross-petition of defendant's amended answer.

The case was then ordered for trial upon the pleadings as they then stood, the reply of the plaintiff being considered only a general denial to the answer and cross-petition, the court, not permitting the plaintiff to file a defense other than a general denial to the new matter set up in the defendant's amended answer and cross-petition. The case was submitted to the court

without the intervention of a jury, and the court made a finding of facts as follows:

First.    That the note set forth in plaintiff's petition is found to have been executed as claimed.

Second.    That the allegations of the amended answer of the Gem City Concrete Co., and the facts therein set forth are true as claimed, and that the sole consideration of said note set forth in the petition herein was the pretended sale of stock to the issuing company.

Third.    That the endorsers were accomodation endorsers and no consideration of whatever kind or character inured to them.

Fourth.    That the said note set forth in the petition should be declared void and of no legal force and effect, and further found that there was due to the Gem City Concrete Co., the sum of $50 for unpaid subscription on one share of stock.

The plaintiff filed a motion for a new trial, which was overruled.    In the trial of the case the plaintiff attempted to introduce testimony which would have substantiated the defenses set up in his amended reply, which was refused by the court and exception taken, particularly, testimony showing that the company had increased its capital stock and that all of this stock including that which it received from the plaintiff had been sold.

The plaintiff also desired to offer testimony showing that the company employed one L. E. Spear as its agent to sell the stock of the company, and that the said Spear did sell the stock, which was not permitted and exceptions taken by the plaintiff.    From the finding of the court and the alleged errors occuring in the trial of said case, error is prosecuted to this court.

The principal questions involved are:

First.    Is a note given by a corporation for the purchase of its own stock, absolutely void and without consideration?

Second.    Is the transaction of the corporation in purchasing its own stock of such a character that if a note be given for the same, and said note includes as a consideration therefore other considerations for the purchase of the stock, is such note void?

Third.    Can the corporation after it has given the note and

received the stock, plead its want of power and successfully defend against the same without returning the stock, or placing the seller of the same in *statu quo.*.

These questions involve the doctrine of *ultra vires* and estoppel as applied to the corporation.

The court below seems to have taken the view that the corporation had absolutely no power to purchase its own stock and that the note was therefore without consideration and void; that the transaction was *malum in se* and that the note was void, although considerations went into the consideration for the note other than the purchase of the stock.

There is some authority in Ohio in support of the view that a corporation can not buy its own stock, but our Supreme Court has held that if this be a general rule, that it is not without exceptions, and in *Morgan* v. *Lewis,* 46 O. S., page 8, we find this language:

"It at least helps us to distinguish it from the case of *Coppin* v. *Greenlees,* 38 O. S., 275, relied upon by defendants in error. In that case it was held that, 'an executory agreement between a manufacturing corporation of this state, and one of the stockholders, for the purchase of the stock of such corporation, by the former from the letter, can not be enforced, either by action for specific performance or for damages.'"

That this presents a very different case from one of an executed contract is emphasized by the following language of McIlvaine, J., by whom the opinion was prepared.

"If it were averred that the plaintiff had purchased the stock from the defendant, or from others, under an agreement with the company that it buy the same from him when he quit its employment, or if the contract of purchase by the defendant had been executed, very different questions would arise."

In *State* v. *Building Association,* 35 O. S., 263, the general principle that a corporation may not traffic in its own stock is recognized. Yet in the same connection it is said:

"We do not deny that a corporation has power to receive shares of its stock as security for a debt or other similar purpose. 26 Ga., 28; 84 Ill., 145; 17 N. Y., 507; 114 Mass., 37; 18 Vt., 131.

"It is apparent from the foregoing that no inflexible rule has been recognized by this court, that a corporation may not in any case, nor for any purpose, receive its own stock. On the contrary, the way is left open for the application of exceptions to the general rule in proper cases."

In the case of *Coppin* v. *Greenlees, etc.*, 38 O. S., 275, Judge McIlvaine admits that there are a line of authorities which support the doctrine that corporations may, when not prohibited by their charters, buy and sell their own stock, but that "they think the decided weight of authority both in England and United States, is against the existence of the power, unless conferred by express grant, or clear implication." However, he recognizes that there may be exceptions and therefore it is logically not true that a corporation can not buy its own stock for want of power; for if there was no power, then the transaction would be absolutely void, and the courts would have no right to inject life into something that was absolutely dead. But this last case was decided principally upon the ground that a corporation could not buy its own stock by reason of the constitutional double liability of a stockholder, which is well known existed at that time, and that the withholding of such stock would be taking from the corporation a valuable asset. This constitutional liability of the stockholder, double the amount of his subscription, does not now exist, and therefore the decision of that case is not of much force at the present time. This constitutional liability of the stockholder is now only whatever may remain due and unpaid on his subscription; and if the decision of Judge Sater of the United States Federal Court, of Columbus, Ohio, in *Mannington* v. *The Hocking Valley R. R. Co.* (Vol. 8 Ohio Law Rep., 451) be correct, it being recent and under the present condition of our statutory and constitutional law, it is certainly entitled to considerable weight; there is no constitutional provision now, as to the stockholder's liability on his stock, that will prevent a corporation from buying its own stock.

In this last case Judge Sater says: "I have been cited to no Ohio case, and I have found none, which announces, as an inflexible rule, that a corporation may not purchase its own stock." The case of *Bank* v. *Carriage,* 17 C. C., 255, was also decided

while the stockholder's constitutional double liability existed.

In the case of the 38th O. S. before referred to, it is said, "that the great weight of authority in England and United States is against the right of the corporation to purchase its own stock." This might have been true at the time it was uttered, but can hardly be said to be true now, at least so far as the United States is concerned. Cook on Corporations, 4th Ed., Section 311, takes the contrary view and gives a number of cases in support of the doctrine, that "when not prohibited by statute or Constitution a corporation may in good faith purchase its own stock."

Thus in *Burns* v. *Burns*, 137 Fed. Report, 781, it is stated, "that in the absence of a constitutional or statutory prohibition, corporations have the inherent right to buy, retire and sell their own stock." In *Re Castle*, 145 Fed. Rep., 224, it is said, "when all the stockholders consent, a purchase will be sustained where there is no proof that the corporation was insolvent, even though it should afterwards go into bankruptcy."

In *Re Copper* v. *Costello*, 95 Pac. Rep., 94 (1908, Aiz.), it was held "that a mining company might purchase its own stock from a person who is superintendent, for the purposes of getting rid of him on account of his bad management, even though the officers believe that the company was insolvent."

In *Re Republic* v. *Swigert*, 135 Ill., 150, it was held "that a corporation may, if it act in good faith, buy and sell its own stock."

In another case, *Chicago* v. *Marseilles*, 84 Ill., 643, the court said that "if the power of the directors of a company are not prohibited by their charter, their right to purchase shares of their own stock is well recognized." (*Cornis* v. *Thayer*, 94 U. S., 631.)

In the recent case of the *Smith Lumber Co.*, reported in 132 Fed. Rep., 618, the court uses this language:

"In the United States, I take it, the weight of authority upholds the right of the corporation in absence of a statutory prohibition to become the purchaser of shares of its own capital stock. * * * But the courts which have held this doctrine have most

definitely held to and rigidly enforced the collateral principle, that a corporation can not become such purchaser where it results in a fraud upon the rights of, or injury or loss to the creditors of the corporation.   *   *   *   The danger of fraud being perpetrated upon or of injury and loss resulting to creditors, was one of potent reasons moving the courts of England to establish and adhere to the rule that a corporation can not become the purchaser of its own shares of stock.''   (Upon the last proposition citing *Trevor* v. *Whitworth*, L. R., 12 App. Cas., 409; *Cook on Corporations*, 4 Ed., Section 309.)

From this decision, we would be led to believe that the reason for the holding even in England, that a corporation could not purchase its own stock, was not founded upon a want of power, but upon the fact that the exercise of such a power might result in fraud.

In 10th Cyc., 1109, it is stated as a general proposition ''that in the absence of a statute denying the right, a corporation may purchase and dispose of its own stock, provided the transaction is made in good faith and without causing injury to its creditors.''   In support of this doctrine, the case of· *Shoemaker* v. *Washburn Lumber Co.*, 97 Wis., 505, is cited.   In 7 Am. & Eng. Enc. of Law, 2d Ed., 818, this is said to be the prevailing doctrine.

We therefore come to the conclusion that the consideration of the purchase of a corporation of its own stock, is not of such an illegal character, that if joined with other considerations in a promissory note, that it would affect the entire consideration of the note and make the same void; but that in case the note could be apportioned, and the holder could recover to the extent of the valid consideration, and no further; and where the parts of the note are not respectively liquidated and definite, the question what amount was founded on one consideration, and what on the other, is to be settled by the jury upon the evidence. *Doty* v. *Knox*, 16 O. S., 134.

It might be well here to add, that it is not claimed so far as we know that there is any statutory provision in Ohio denying the right of a corporation to purchase its stock; neither in the case at bar, is it claimed in the pleadings of the defendants,

that the purchase of such stock would injure creditors; nor is there anything in the testimony to show that the corporation was absolutely insolvent at the time it made its purchase. True one witness says that it was probably insolvent, but the directors, those who endorsed the note, all say that they did not expect to pay the note, as they believed that the corporation would pay it. The conclusion therefore is that, in the opinion of those who ought to have known, the corporation was solvent; and if that be true, creditors could not have been injured.

The further fact exists that the corporation, if it was insolvent at that time, continued in business for a year or two thereafter. It seems to us further that the testimony conclusively shows that the sole consideration of said note was not alone the purchase price of the stock.

In the minutes of the corporation, which ought to be conclusive upon the defendants in this case, we find the statement that Mr. Siders, the plaintiff, who was secretary of the company, offered to resign his position, if the company would pay him what they owed him and take back his stock; and thereupon he presented a bill of what he claimed that the company owed him, and finally he agreed that, *"for his stock, salary and money advanced to pay small bills, he would take $950."* The bill that he rendered to the corporation, showed claims aggregating $1,249, and the most that he could have owed the company for the twenty shares of stock which they claimed he had subscribed for would be $1,000.

Therefore, in addition to his stock at its full subscription price, he was surrendering his position of secretary and $249, which he claimed.

We have been somewhat at a loss to understand how the defendants, or the court below, came to the conclusion that he had only paid his subscription for nineteen shares of his stock and still owed for one share. There is no evidence anywhere showing that he specifically paid for nineteen shares. The most that could be claimed was that from a statement furnished by him he charged himself with $900 paid on stock. In the agreement for which he was to accept $950, it was specifically stated

that it was to be for all of his stock, and there was no claim made
at that time that there were any unpaid subscriptions:    and the
conclusion would irresistibly follow that whether his stock was
paid or unpaid, that it all should go back to the corporation, and
ᴌor such stock, paid or unpaid, and the other considerations, he
was to receive the sum of $950; certainly the corporation would
not give its note for $50 more than it owed.    And that further he
did resign his secretaryship, and turned over to the corporation
all of his said stock.    The mere fact that nineteen shares of stock
at the subscription price of $50 per share, equals the face value
of the note, does not show that the consideration of the note was
intended as a payment of that much stock.

But if it be admitted that as a general rule a corporation can
not purchase its own stock, the case at bar comes within an ex-
ception recognized by our Supreme Court, and that is that when
the contract has been executed, then the corporation can not plead
its inability to purchase.

In the case at bar the transaction so far as the purchase of the
stock was concerned became a completed one when the note was
signed and delivered, and the plaintiff released all his claims
against the corporation, resigned his secretaryship, and turned
over to the corporation all of his stock.

The fact that the note remained unpaid did not affect the ex-
ecution of the contract (*Wright* v. *Pipeline Co.,* 101 Pa. St.,
204); and under these circumstances the defense that the giving
of the note, for the amount of the stock, was *ultra vires* will not
be permitted.    *Dewey* v. *Toledo R. R. Co.,* 91 Mich., 351.

In addition, however, to it having been executed, we have in
this case the further fact that the corporation has received all
it contracted for, and it has made no offer or proposition to turn
back to the plaintiff the alleged consideration, and it will be
further observed that, it not only accepted the stock, but it sold
it to other parties and received a consideration therefor.

Therefore we might well say as was said by the court in
*Wright* v. *Pipeline Co.,* above referred to, "the defense of *ultra
vires* comes with better grace, if made before it has discovered
that it has made a bad bargain."

In 10th Cyc., 1156, it is said:

"The great mass of judicial authority seems to be to the effect that where a private corporation has entered into a contract in excess of its granted powers, and has received the fruits or benefits of the contract and an action is brought against it to enforce the obligation on its part, it is estopped from setting up the defense, that it had no power to make it.   *   *   *   (Citing authorities from California, Connecticut, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Mississippi, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, South Carolina, Washington, Texas, Wisconsin and United States Supreme Court.) The principle is that the rule requiring the observance of good faith and fair dealing, is just as applicable to corporations as to individuals, and that neither can involve others in onerous engagements and, with the consideration of the contract in their possession, disavow their acts to the damage and discomfiture of others, unless it clearly appears that there was an absolute want of capacity to make the contract."

And as in one illustration it is said:

"Thus if a corporation has executed a promissory note for a consideration which it has received and retained it is bound to pay the note, although it may have been executed in furtherance of a contract which was *ultra vires;*" also, "It can not where it has purchased property contrary to a prohibition or without an authorization in its charter retain both the property and its price; it can not retain the property and refuse to pay the price or set up the defense of *ultra vires* when sued for the same."

And again:

"The most frequent application of this doctrine, is that where a corporation has entered into a contract which has been fully executed by the other contracting party, so that nothing remains for the corporation to do but to pay the consideration money, it will not be allowed to set up that the contract was *ultra vires.*"

Our own Supreme Court has said: "and it seems to be now the well established rule that where a contract, not illegal, has been executed and fully performed on the part, either of the corporation or of the other contracting party, neither will be heard to object that the contract and such performance were not within the legitimate powers of the corporation." *Larwell* v. *Hanover,* 40 O. S., 274.

In a case in the United States Supreme Court, *Comis* v. *Thayer*, 94 U. S., 631, under a statute which provided that no national bank shall be the purchaser or owner of any if its own stock, the court held that the purchase by the bank of its own shares was not void, even if it was *ultra vires*.

So in the case at bar, at least where it is not shown that creditors of this corporation were injured by its purchase of this stock, we are forced to the conclusion that such purchase could in no sense be determined to be an illegal contract. It is at most a voidable one, and the defense of *ultra vires* can not be successfully made on that ground.

The endorsers upon this note having been directors of the corporation, at most can not stand in any better position than the corporation itself; if anything, having full knowledge of the corporation affairs and, as continuing stockholders and directors, they might easily be held to have received a benefit from this transaction. Undoubtedly they thought they would, or they would not have lent their credit to this note.

We think that the court below erred in sustaining the defendants' motion to strike out the plaintiff's second defense in his second amended reply, and in not permitting the plaintiff to introduce testimony tending to substantiate the averments of said second defense; that there was error in not permitting the plaintiff to introduce evidence tending to show that the Gem City Concrete Co. had employed an agent to sell the stock purchased from this plaintiff, which was in full at least of the consideration of the note, the cause of plaintiff's action herein, and that said agent did sell said stock and that the court erred in its finding of facts that the sole consideration of said note was the sale of said stock to said defendant, the Gem City Concrete Company, and that said note was void and of no effect; that the court erred in finding that there was due from the plaintiff to defendant, the Gem City Concrete Company, the sum of $50 for unpaid subscription on one share of stock; and that the court erred in overruling the motion for a new trial herein.

The judgment of the common pleas will therefore be reversed and the cause remanded for further proceedings.