Turner, J.
 

 The parties will be referred to as they appeared in the Court of Common Pleas.
 

 This is an action brought by dissenting shareholders under favor of Section 8623-72, General Code, and related sections, to determine the fair cash value of their shares and to secure a judgment for such fair cash value against defendant corporation. When the case came on for hearing in the trial court, plaintiffs moved for a judgment on the pleadings, which was overruled, and the plaintiffs not desiring to introduce any evidence, defendant interposed a motion to dismiss plaintiffs’ petition for failure of proof, which latter motion was sustained. Thereafter, a motion for new trial was filed, overruled, and final judgment entered.
 

 On appeal, the Court of Appeals reversed the judgment of the trial court and remanded the cause with instructions to proceed to have the value of plaintiffs’ shares determined and for further proceedings according to law. In seeking a reversal of the judgment of the Court of Appeals, and an affirmance of the judgment of the Court of Common Pleas, defendant relies upon the following three grounds:
 

 
 *10
 
 (1) That plaintiffs failed to prove (a) substantial prejudice, and (b) that the corporate articles do not expressly or by implication provide for or permit the amendment adopted by the corporation and complained of by plaintiffs.
 

 (2) That the relief, if granted, would render the corporation “unable to meet its obligations as and when the same would mature,” and the corporation “would be disabled from performing its corporate functions.”
 

 (3) That Section 8623-72, General Code, “is in violation and contravention of Sections 1 and 16 of Article I of the Constitution of the state of Ohio and to the Fourteenth Amendment of the Constitution of the United States * * *.”
 

 At the outset, it should be noted :
 

 (a) That plaintiffs’ preferred shares were issued to them in 1922 — approximately five years before the enactment of the General Corporation Act, and
 

 (b) In Ohio, a stock certificate issued by a corporation is still a contract between the corporation and the holder of the certificate.
 
 Geiger
 
 v.
 
 American Seeding Machine Co.,
 
 124 Ohio St., 222, 177 N. E., 594, 79 A. L. R., 614.
 

 As the applicable statutes are plain, it will not be necessary to discuss the various theories adopted in different jurisdictions relative to the rights of dissenting shareholders.
 

 To facilitate flexibility in the corporate structure, and at the same time to protect vested contractual rights of shareholders, the Legislature has provided in Section 8623-14, General Code, that broad amendments may be made, but when changes are made in the setup which substantially prejudice the holders of a particular class of shares, and the articles do not expressly or by implication provide for or permit such amendment, dissenting shareholders may petition the court to determine and render judgment against the
 
 *11
 
 corporation for the fair cash value of their shares, provided the corporation is not then insolvent or by the redemption of the particular shares would probably become insolvent. (Section 8623-41, General Code.) Upon the payment therefor by the corporation, the certificates are to be surrendered to the corporation. (Section 8623-72, General Code.)
 

 The petition contains the following allegation: “That neither in the articles nor in the provisions of the preferred stock was any right reserved to the defendant company, either expressly or by implication, to amend said paragraph 5 of the articles or provision 5 of the preferred stock * * V’ At the end of more than six pages of the answer, as set forth in the record, there is to be found the following: “Further answering, the defendant denies each and every allegation contained in the petition of the plaintiffs not herein-before specifically admitted to be true.”
 

 Following the holding of this court in
 
 Reiff
 
 v.
 
 Mullholland,
 
 65 Ohio St., 178, 62 N. E., 124, wherein it was held that “all the allegations of a pleading should be considered in determining the effect of any . of them, and a general denial of the allegations of a petition is unavailing if inconsistent with the express admissions of the answer,” the Court of Appeals in the instant ease said: “We determine that under the language of the pleadings no issue was presented on the question of reserved rights in the corporation to amend the articles in the particulars set out in the pleadings.” We agree with this holding in respect of the pleadings.
 

 We also agree with the following statement of the Court of Appeals: “Furthermore, a reading of all the pleadings leads to no other conclusion than that the entire proceedings relative to the amendment to the articles were carried on through the provisions of the Code authorizing such amendments, and not through any express provisions contained in the charter.”
 

 Releasing all moneys in the special fund and restor
 
 *12
 
 ing such, moneys to the general funds of the company free from any obligation of the company to use such moneys for the redemption of its preferred shares, canceling the deficit in the sinking fund, and relieving the company from setting aside the eight cents per ton prior to May 1, 1942, were each of advantage to the common shareholder and to the substantial prejudice of the preferred shareholder. As pointed out by the Court of Appeals:
 

 “The deficiency in the sinking fund of almost $1,-000,000 had accrued prior to the date of the amendment. This sinking fund was to be set aside in a special fund to be available to retire the preferred stock at 110. Originally article 5 provided that if for any reason the condition of the company would not permit the
 
 8‡
 
 per ton placed in this special sinking fund, this amount should be made good in subsequent years before the payment of any dividends on preferred or common stock. Under the amendment this right to have the deficiency made up is lost, and the obligation for the entire amount cancelled. Between the date of the amendment and May 1,1942, the company may pay a dividend on preferred and common stock, conditioned only that the profits of the company are sufficient with which to make such payment. Following May 1, 1942, and after the payment of 8$ per ton an all coal mined, the company, if profits warrant, could pay dividends on both common and preferred stock. Of course, the preferred stock would have prior rights, and this would probably include defaulted payments of dividends on preferred stock. In the provisions of the articles the dividends are cumulative. Nevertheless, common stockholders will be advantaged in the future, providing the profits of the company are sufficient to pay the current
 
 8‡
 
 per ton per year, and dividends to the preferred and common stockholders. By way of example, let us assume that the company under its plan of mechanizing makes a profit in the next one, two
 
 *13
 
 or three years, or any number of years, sufficient to pay off the defaulted cumulative dividends on preferred stock, and in 1942 and thereafter pay this
 
 8‡
 
 per ton on the coal mined, still has adequate profit to pay all preferred dividends and in addition dividends on common. But for the amendment the common stock would not receive any dividends, but the amount would go towards paying the $1,000,000 deficiency in the sinking fund.
 

 “It is this advantage to the common stockholders which we think presents a substantial prejudice to the plaintiffs as holders of preferred stock.”
 

 The amendment which the defendant company adopted on September 29,1939, follows. The additions to the original paragraph 5 are set out in italics. There were no eliminations.
 

 “Commencing on the first day of May, 1942,
 
 the company agrees to set aside each year, in a special fund for the purpose of redeeming its preferred stock, not less than eight cents
 
 (8‡)
 
 per ton on all coal mined by it; said sum so set aside may be invested temporarily in such securities as the board of directors may determine ; and said fund shall be used from time to time at such times and in such amounts, as the board of directors shall determine, in the redemption of the preferred stock
 
 pro rata among the holders of said preferred stock according to the number of shares held by each,
 
 provided, however, that if in any year, for any cause, the company is unable to set aside in said special fund said full sum of eight cents
 
 (8<¡)
 
 per ton,
 
 or any part thereof,
 
 the deficiency shall be made up in the next subsequent years before any dividends are paid on any stock, common or preferred.
 
 Any deficiency in said special fund existing at the date hereof under this provision of the articles, as the same was prior to this amendment, as a result of the failure or inability of the company to set dside said special fund in respect to coal heretofore mined by it, is hereby cancelled and the
 
 
 *14
 

 company relieved from cmy liability to set aside said fund in respect to all coal mined by it to the date hereof and as to which any deficiency exists, and in respect to all coal mimed by it from the date hereof to the first day of May, 1942. All moneys in said speicial fund as of the twenty-ninth day of September, 1939, are hereby released and restored to the general funds of the company, free from any obligation of the company to use said moneys for the redemption of its preferred stock.”
 

 Paragraph 5 of the articles and provisions of the preferred shares prior to the amendment, obligated the corporation to set aside eight cents per ton on all coal mined by it in a special fund for the redemption of the preferred shares at the price of $110 per share fixed in paragraph 4, before any dividends, either common or preferred, could be paid. On the day before the amendment, there was an admitted deficiency in this sinking fund of $988,064.89, as a result of the corporation having failed to set aside this fund on coal theretofore mined.
 

 As provided in paragraph 5 prior to the amendment: “* * * if in any year, for any cause, the company is unable to set aside in said special fund said full sum of eight cents (8$) per ton, the deficiency shall be made up in the next subsequent years before any dividends are paid on any stock, common or preferred.” The answer admits that the amendment cancels the deficit in the fund, relieves the company from setting aside an estimated $268,666.67 between the date of the amendment and May 1,1942, and that $7,620 was transferred from the sinldng fund to the general funds of the corporation on the day the amendment was adopted'.
 

 The total sinking fund that would have accrued up to May 1, 1942, including the deficit and the estimated accumulation, would approximate $1,265,000. The proportionate share of that fund (if intact) applicable to
 
 *15
 
 the redemption of plaintiffs’ shares would amount to approximately $60,000.
 

 Under the amendment, the right of plaintiffs to have their proportionate share of the preferred stock redeemed by this sinking fund prior to the payment of any dividends has been lost.
 

 Under this amendment to paragraph 5, the corporation is freed from its former sinking fund obligation to the preferred shares, and can pay dividends at any time on either the common or preferred, if earned, without regard to the original conditions of both the articles and provisions.
 

 Appellant’s brief contains the following statement: “The action taken by the shareholders wiped out the deficit existing in the special fund for the retirement of the preferred shares; postponed the setting up of said fund until May 1, 1942, and restored to the working funds of the defendant the sum of $7,620 in the special fund.” The foregoing admissions are fully sustained by the pleadings.
 

 As stated by the trial court, and as substantiated by the record, “it was agreed by counsel that plaintiffs’ allegations in their reply were true that their shares had been voted against confirmation of the actions of the officers and directors annually and against making the loan and executing a mortgage on September 29, 1939.”
 

 In the case of
 
 Johnson
 
 v.
 
 Lamprecht,
 
 133 Ohio St., 567, 15 N. E. (2d), 127, it was held in the third paragraph of the syllabus: “When there is a change in the terms and conditions of stock by reason of an amendment to the articles of incorporation, dissenting shareholders have a remedy under the provisions of Section 8623-72, General Code. * * •”
 

 Under the allegations of the petition and the admissions contained in the first defense of the answer, plaintiffs’ case was made and there was no necessity for the introduction of any evidence in respect thereof. Such
 
 *16
 
 admissions fully meet the requirements of Section 8623-15, paragraph 9, General Code, -which provides:
 

 “(9) An amendment or amended articles, when adopted in the manner prescribed in this section, shall in the absence of clear and convincing proof to the contrary be presumed to be fair and equitable in every respect to all shareholders.”
 

 It remains to determine whether the allegations of either the second or third defenses are sufficient in law.
 

 The principal allegation of the second defense is:
 

 “* * * the plaintiffs are not entitled to maintain this action for the reason and upon the ground that if the said plaintiffs are permitted to maintain this action and the court ultimately determine the fair value of said shares and order the same paid by the corporation, the defendant would be unable to meet its obligations as and when the same would mature and would be disabled’ from performing its corporate functions, all to the detriment of the defendant, its creditors and preferred shareholders.” This allegation is insufficient in law, for the reason that it fails to measure up to the prohibition of Section 8623-41, General Code.
 

 Section 8623-41, General Code, provides, in part:
 

 “A
 
 corporation may purchase shares of any class issued by it: * * *
 

 “(7) From shareholders who by reason of dissent are entitled to be paid the fair cash value of their shares; * * *
 

 “A
 
 corporation shall not purchase its own shares except as provided in this section, nor when there is reasonable ground for believing that the corporation is unable, or by such purchase may be rendered unable, to satisfy its obligations and liabilities.”
 

 The last above-quoted paragraph of Section 8623-41, General Code, refers to insolvency; that is, when there is reasonable ground for believing that the corporation will not have sufficient assets left to pay its liabilities to creditors — not sharehplders. The allegations of the
 
 *17
 
 second defense not only fall short of an allegation of insolvency, but the answer in the first defense alleges “that it did offer to pay to the plaintiff, Roy L. Wildermuth, the sum of $3,030 as and for the fair cash value of his said preferred shares, and to Goldie J. Wildermuth as and for the fair cash value of her preferred shares the sum of $29,904.” Here is an admission in the defendant’s answer that the corporation was solvent. Certainly there could not have been a fair cash value of plaintiffs’ preferred shares unless the corporation’s assets exceeded its liabilities to creditors.
 

 The gist of the third defense is to be found in the following averment: “Further answering, the defendant avers that General Code Section 8623-72 is in violation and contravention of Sections 1 and 16 of Article I of the Constitution of the state of Ohio and to the Fourteenth Amendment of the Constitution of the United States of America in that it may so operate as to place said plaintiffs in a position superior to that of the other holders of the preferred shares of said defendant of the same class by awarding to said plaintiffs a greater percentage of the assets of said defendant in payment of their said shares than would be available for the remaining preferred shareholders of said defendant and thus deprive said remaining preferred shareholders of their property without due'process of law. ’ ’
 

 So far as the “superior position” is concerned, that claim is fallacious on its face, for the reason that all that plaintiffs may recover is the fair cash value of their shares on the day preceding the amendment. The shares of the same class of every other shareholder would necessarily have the same fair cash value.
 

 So far as concerns a violation of the Fourteenth Amendment, the Supreme Court of the United States, in the case of
 
 Voeller
 
 v.
 
 Neilston Warehouse Co.,
 
 .... U. S., ...., 85 L. Ed., 314, 61 S. Ct., 376, decided Janu
 
 *18
 
 ary 6, 1941, furnishes a conclusive negative answer to any such contention.
 

 As to Sections 1 and 16 of Article I of the Constitution of Ohio: In the absence of the provisions of Section 8623-72, General Code, plaintiffs might have a right to complain of the violation of their constitutional rights, but it is not seen how any right of the corporation itself has been violated. .The corporation may not be heard to complain because the dissenting shareholder is given a remedy for the violation of a vested right.
 

 In the cases of
 
 Williams
 
 v.
 
 National Pumps Corp.,
 
 126 Ohio St., 457, 186 N. E., 403, and
 
 Miller
 
 v.
 
 Canton Motor Coach, Inc.,
 
 133 Ohio St., 384, 14 N. E. (2d), 15, this court dismissed a petition in error and an appeal for the reason that no debatable constitutional question was involved in either of these causes. As will be seen from the report of the first case in 46 Ohio App., 427, 188 N. E., 756, and from the report of the second case in 58 Ohio App., 94, 16 N. E. (2d), 486, the Courts of Appeals had held that the statutes here involved were constitutional.
 

 We hold that no constitutional right of the defendant is violated by the procedure herein undertaken under Section 8623-72, General Code, and that that section, so construed, does not offend or contravene any provision of the Constitution of the United States or of the Constitution of the state of Ohio.
 

 Defendant, in its pleading and brief, makes the claim that plaintiffs would be better off and their shares would be worth more after the amendment — in substance, that the amendment is beneficial and not prejudicial. The short answer to that is that plaintiffs, whose vested rights will be substantially prejudiced by the amendment, have the sole right to make the decision whether they will approve and go along or dissent and withdraw. Whether the corporation will be
 
 *19
 
 able to continue business after paying to tbe plaintiffs tbe fair cash value of tbeir shares is immaterial so long as such payment does not render the defendant company insolvent as of the day preceding the passage of the amendment. By insolvent here is meant that the corporate assets are of less value than the aggregate of the claims of creditors.
 

 If paying off the dissenting shareholders is too great a burden for the corporation, the corporation may rescind its attempted action. Section 8623-72, General Code, contains the following provision: “The right of a dissenting shareholder to be paid the fair cash value of his shares shall cease if and when the corporation for any reason shall abandon its purpose or the shareholders shall revoke the authority to sell, lease, exchange, or otherwise dispose of its assets, consolidate, reorganize or amend its articles. ’ ’
 

 The defendant contends: “It never was the intention of the statute that one shareholder (and all too often a disgruntled shareholder) could ‘hamstring’ a corporation or take action which would put a going corporation out of business or disable it from performing its corporate functions or prejudice the rights of its creditors.” Of course, the dissenting shareholder may not prejudice the rights of creditors, but it never was the intention of the Legislature that corporate management might secure capital upon the representation that the investment was to be safeguarded by provisions acceptable to the investor and then, after the investment had been made, that the corporate management or a majority of its shareholders might repudiate any part of the contract through which it had secured a part of its capital. Section 8623-72, General Code, is a protection to the corporation and a substitute for the former remedies of a minority shareholder.
 

 
 *20
 
 Therefore, the judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Williams, Matthias, Hart, Zimmerman and Bettman, JJ., concur.