**In re the SALEM TOOL COMPANY, Debtor.**

**Bankruptcy No. B87–01577–Y.**

United States Bankruptcy Court, N.D. Ohio.

Feb. 10, 1988.

Michael A. Gallo, Youngstown, Ohio, for debtor/DIP.

Kenneth L. Gibson, Cuyahoga Falls, Ohio, for Barbara J. McCorkhill.

### MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

On July 1, 1982, a stock purchase agreement was entered into between the Debtor and BARBARA J. McCORKHILL. Pursuant to the Agreement and a contemporaneous promissory note, the Debtor was obligated to pay Ms. McCorkhill the principal amount of Eight Hundred Twenty–Five Thousand & 00/100 Dollars ($825,000.00), with interest accruing at 12 percent (12%) per annum. In return, Ms. McCorkhill agreed to endorse and deposit stock certificates evidencing her ownership of twenty-six (26) shares of common stock, into an escrow account at National City Bank. After default by the Debtor in 1984, two separate interim agreements were concluded in which the Debtor agreed to make certain payments to Ms. McCorkhill in consideration of her forbearance in exercising her rights under the default provisions of the initial repurchase agreement. The last interim agreement expired in June, 1987. In December, 1987, the Debtor filed its Voluntary Petition for Reorganization under Chapter 11 of Title 11. Ms. McCorkhill

then filed a Motion for either relief from the automatic stay in order to institute default procedures or, in the alternative, for adequate protection of her security interest. A hearing was held on January 5, 1988, and the Court subsequently ordered that the automatic stay be continued, pending further Order of this Court.

## DISCUSSION

11 U.S.C. Sec. 362(d) provides:

On request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay provided under subsection (A) of this section, such as by terminating, annulling, modifying or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The Movant's Motion for adequate protection is considered in the context of the motion for relief from the stay as a lack of adequate protection may be a basis for relief from the automatic stay.

Ms. McCorkhill requests relief from the stay in order to enforce the default relief terms of the stock repurchase agreement. The Debtor argues that the stock redemption agreement is invalid by reason of Sec. 1701.35(B) of the Ohio Revised Code, which provides in pertinent part:

(B) A corporation shall not purchase its own shares, except as provided in this section, nor shall a corporation purchase or redeem its own shares if immediately thereafter its assets would be less than its liabilities, plus its stated capital, if any, or if the corporation is insolvent, or if there is reasonable ground to believe that by such a purchase or redemption it would be rendered insolvent.

There was no evidence that the Debtor's liability exceeded its assets in July, 1982, when the Corporation agreed to redeem the Movant's stock. However, the Debtor's Chapter 11 Petition filed on December 4, 1987 states that the Debtor's total assets then amounted to Seven Hundred Eighty Thousand & 00/100 Dollars ($780,000.00), while its total liabilities were scheduled at Two Million, Four Hundred Thirty–Seven Thousand, Three Hundred Ninety–One & 17/100 Dollars ($2,437,391.17). The Debtor was insolvent when it filed its Chapter 11 Petition and there is no evidence to rebut the presumption that it continues to remain insolvent. Thus, the statute appears to make the contract unenforceable. The Movant advances several arguments in response.

Movant first contends that a corporation cannot rely upon the illegality of its own *ultra vires* acts to defend itself against an action for enforcement of a stock repurchase agreement. Indeed, this appears to be a valid assessment of Ohio law. Lack of corporate power, by itself, does not appear to defeat the corporate obligation of a stock repurchase agreement. *Siders v. Gem City Concrete Co.*, 13 Ohio C.C. (n.s.) 481 (Ct.App.1910), *aff'd* 87 Ohio St. 519 (1913); *Humphrey v. Koogler*, 10 Ohio L.Abs. 42 (Ct.App.1931).

However, the Debtor's intervening insolvency will prevent enforcement of a corporate stock repurchase obligation when it will be prejudicial to creditors. The Ohio Supreme Court best summed it up when it declared:

The weight of authority is that a contract by a corporation to purchase shares of its own stock will not be enforced by the courts after the corporation has become insolvent. The reason for this holding is placed not upon the ground that a corporation has no power to buy its own stock, but on the ground that when the rights of creditors intervene, it would amount to a fraud on the creditors to enforce the contract.

*Squire v. Rafferty*, 131 Ohio St. 156, 164, 2 N.E.2d 255, 258 (1936). This same sentiment was reflected in *Wildermuth v. Lorain Coal and Dock Co.*, 138 Ohio St. 1, 32 N.E.2d 413 (1941), where the Court wrote

"[o]f course, the dissenting shareholders may not prejudice the rights of creditors...." *Id.* at 7, 32 N.E.2d at 421.

The Movant also suggests that a corporation does not have standing to raise the *ultra vires* defense. Whatever the merits of that argument may be in state court, federal bankruptcy law governs here. Bankruptcy Rule 6009 authorizes the trustee or debtor-in-possession to prosecute or defend any action on behalf of the estate before any tribunal. Thus, it is clear that the debtor-in-possession is the properly authorized party to defend this action. More importantly, as pointed out above, the Debtor's defense concerns possible fraud on the creditors rather than *ultra vires* acts of the Debtor alone.

The Movant's last contention is that subsequent insolvency is immaterial where a corporation was solvent when the transaction was entered into. While this may generally be true, the use of an installment purchase arrangement demands that the insolvency test be applied contemporaneously with each installment payment when due in order to protect the corporate creditors. The Ohio Supreme Court shared this view when it subscribed to the language used in an opinion written by the Michigan Supreme Court:

... the Court said: 'The contention of counsel for plaintiff that if a promise when given was valid, subsequent insolvency of the maker would not make it invalid, is, as to the usual and ordinary contracts of corporations and individuals, sound. But the promise of such a corporation to buy its own stock, if under any circumstance is valid, must be considered as made, and accepted with the understanding that the shareholder may not, in face of insolvency of the company, change his relation from that of shareholder to that of creditor, escaping responsibilities of the one and receiving the benefits of the other. To this rule, there appears to be no exception.'

The right to enforce such a provision is not denied as between the parties where rights of creditors have not intervened. It is this intervention that affects enforcement.

*Squire v. Rafferty,* 131 Ohio St. 156, 164, 2 N.E.2d 255, 258–59. We adopt this reasoning and find the stock purchase agreement to be now unenforceable, in order to protect the paramount interests of the creditors of the estate. *See also Neimark v. Mel Kramer Sales, Inc.,* 102 Wis.2d 282, 306 N.W.2d 278, 283 (1981); *McConnell v. Estate of Butler,* 402 F.2d 362, 366 (9th Cir.1968). Consequently, the Court declines to grant relief from the stay to allow enforcement of the agreement.

The Bankruptcy Code allows relief from the stay to be granted if there is a lack of adequate protection of Movant's interest in the property. The Debtor argues that the Movant has no interest to protect. Under applicable bankruptcy law, equity security holders are the last to receive any distribution in a liquidation. Therefore, when a company is insolvent, its stock is of speculative value. The stock will only acquire ascertainable value when a plan of reorganization is formulated, confirmed and effectuated. For the time being, attempts to value Movant's stock would require the Court to indulge in purely subjective measurements so as to make any determination wholly speculative. Such speculation is not warranted in these circumstances. Furthermore, the Court believes that the Debtor may have acquired some equity in the stock by virtue of past payments to Ms. McCorkhill.

Finally, the Court has serious questions regarding the effect on possible reorganization which a sale of this stock would produce. It is not entirely clear that such a sale would be wholly innocuous. The primary consideration now before us is reorganization of this Debtor in the interest of creditors. Movant has previously agreed by contract to surrender her voice as a stockholder in return for the indebtedness of Debtor to her. The remedy on default of that obligation to her must be treated within this proceeding. Movant's Motion is overruled and the Court will enter an Order consistent with this Memorandum Opinion.